THE STATE, EX. REL. NATIONAL BROADCASTING COMPANY, INC., APPELLEE AND
CROSS-APPELLANT, *v.* CITY OF CLEVELAND ET AL.,
APPELLANTS AND CROSS-APPELLEES.

[Cite as State, ex rel. Natl. Broadcasting Co., *v.* Cleveland (1991),
57 Ohio St. 3d 77.]

(No. 89-2076—Submitted November 13, 1990—Decided January 23, 1991.)

*Vorys, Sater, Seymour & Pease, C. William O'Neill, Charles P. Hurley* and *Robert N. Webner,* for appellee and cross-appellant.[1]

*Craig S. Miller,* law director, *Barbara R. Marburger* and *Kathleen A. Martin,* for appellants and cross-appellees.

*Stephanie Tubbs Jones,* prosecuting attorney, *Patrick J. Murphy* and *Colleen C. Cooney,* urging reversal for *amicus curiae,* Prosecuting Attorney of Cuyahoga County.

*Lee I. Fisher,* attorney general, *Shawn H. Nau* and *Kirk T. Albrecht,* urging reversal for *amicus curiae,* Ohio State Highway Patrol.

*Per Curiam.* We hold that the court of appeals erred in finding these Cleveland police investigations did not create a "confidential law enforcement investigatory record" under R.C. 149.43(A)(2). We remand for an *in camera* inspection and redaction of protected information contained in these investigative files. We further hold the court of appeals did not err in declining to apply the "trial preparation record" exception under R.C. 149.43(A)(4), nor did it abuse its discretion in declining to award NBC attorney fees.

## I

### Confidential Law Enforcement Investigatory Record

Cleveland argues that the court of appeals erred in holding that routine police investigations could not produce "confidential law enforcement investigatory records," R.C. 149.43 (A)(2). NBC argues that Cleveland failed to prove that these records were confidential law enforcement investigatory records. In NBC's view, the records were created to routinely monitor and discipline police personnel as to their use of deadly force. NBC urges that we not reweigh the factual determinations that the court of appeals made in ordering release of the records.

R.C. 149.43(A)(2) provides a specific definition:

" 'Confidential law enforcement investigatory record' means *any record* that *pertains* to a *law enforcement* matter of a *criminal, quasi-criminal, civil,* or *administrative* nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

"* * *

"(c) 'Specific confidential investigatory techniques or procedures or specific investigatory work product[.]" (Emphasis added.)

---

[1] On December 13, 1989, a notice of substitution of counsel for National Broadcasting, Inc. was filed by Terence J. Clark and Katharine A. Van Tassel of Squire, Sanders & Dempsey.

In *State, ex rel. Polovischak,* v. *Mayfield* (1990), 50 Ohio St. 3d 51, 52, 552 N.E. 2d 635, 636-637, we noted: "To determine whether a record is exempt from public disclosure under R.C. 149.43, a two-step analysis is required. First, is the record a confidential law enforcement record? Second, would release of the record 'create a high probability of disclosure' of any one of four kinds of information specified in R.C. 149.43(A)(2)?"

In this case, the court of appeals essentially held that Cleveland did not meet the *first step* of the definition under R.C. 149.43(A)(2) that it prove the investigations were a confidential law enforcement investigatory record. We disagree.

Cleveland police detectives investigated every incident where deadly force was used. The fact that a police officer was involved did not alter the purpose, type, or nature of the ensuing criminal investigation even if the initial facts indicated accident or self-defense. The creation of UDFIT in 1983 did not change the manner of conducting these investigations.

The court of appeals correctly recognized that Cleveland had "* * * the burden of proving that the records are excepted from disclosure by R.C. 149.43." *NBC I, supra,* paragraph two of the syllabus. However, this case does not hinge on issues of fact or failures of proof, as NBC urges. Nor are we reweighing the evidence. Instead, the court of appeals misinterpreted our prior decisions in holding that Cleveland did not meet the first step of the definition of a "confidential law enforcement investigatory record" simply because the investigations were *routinely* conducted.

In *NBC I,* we did refer to routine internal investigations undertaken to monitor police officers. *Id.* at 83, 526 N.E. 2d at 790. However, that discussion was premised on the preliminary evidence then before this court. At that time, the actual investigative files compiled were not before the court, but the evidence made them appear comparable to police personnel records. From the evidence now before us, including the actual investigative files, and in view of the specific findings of the court of appeals after our initial remand, the records do not resemble police personnel records. Rather, they appear comparable to those records compiled pursuant to criminal investigations that police routinely perform when they investigate crimes.

The court of appeals explicitly found that the "* * * investigations of the use of deadly force by police officers 'were conducted in the same manner and for the same purpose as were investigations of incidents involving the use of deadly force by non-police.' * * * The 'primary purpose' of the investigations * * * is to present information to the prosecutor who determines whether to file criminal charges. * * * If the prosecutor does file criminal charges, the records prepared during these investigations * * * assist the prosecutor 'in preparing the case for presentation to the County Grand Jury and the Common Pleas Court.' * * * After criminal proceedings have been concluded, an administrative review of the incident is conducted. * * * [Citations to record omitted.]"

In *State, ex rel. Beacon Journal Publishing Co.,* v. *Univ. of Akron* (1980), 64 Ohio St. 2d 392, 397, 18 O.O. 3d 534, 537, 415 N.E. 2d 310, 314, we also referred to "routine factual reports" not being exempt from release. However, that discussion concerned investigative material that did not meet the *second step* of the definition of "confidential law enforcement investigatory records," namely, "a

high probability of disclosure" of specific investigatory work product materials, R.C. 149.43(A)(2)(c), or, inferentially, of other specifically protected information under R.C. 149.43(A)(2)(a), (b), or (d).

Neither *NBC I, supra,* nor *Beacon Journal, supra,* ever established an automatic, *per se* exclusion of all *routine* police criminal investigations from the first step of the definition of "confidential law enforcement investigatory record." The words "routine" or "routinely" are not used in the public records statute. We find no reason to engraft onto the precise words of R.C. 149.43(A)(2) a requirement that "confidential law enforcement investigatory records" be publicly released, without exception, simply because the records resulted from routine police investigations. As Cleveland urges: "The function of investigators is to investigate. That is their 'routine.' There is no such thing as a non-routine investigation."

Indeed, the broad language of the definition in R.C. 149.43(A)(2), which refers to "criminal, quasi-criminal, civil, or administrative" law enforcement matters, would be frustrated by such an interpretation. In *State, ex rel. Dayton Newspapers, Inc.,* v. *Rauch* (1984), 12 Ohio St. 3d 100, 12 OBR 87, 465 N.E. 2d 458, we determined that an autopsy report was excepted from release as a public record. However, nothing could be more routine than an autopsy in a homicide investigation. If such a *per se* exclusion of all routine police investigations were to be created, it would render meaningless the General Assembly's determination in R.C. 149.43(A)(2) that "confidential law enforcement investigatory records" should *not* be publicly released in certain specific instances.

Not only the police investigations here but also the disciplinary and ad-

ministrative reviews of the police investigations were encompassed in this broad statutory language as a "confidential law enforcement investigatory record." In *State, ex rel. McGee,* v. *Ohio State Bd. of Psychology* (1990), 49 Ohio St. 3d 59, 550 N.E. 2d 945, we held that a State Board of Psychology investigation qualified as an exempt confidential law enforcement investigatory record. In *State, ex rel. Polovischak,* v. *Mayfield, supra,* we held that certain documents relating to an investigation of a Bureau of Workers' Compensation employee by the bureau's Internal Security Committee qualified as an exempt "confidential law enforcement investigatory record."

Moreover, these records continue to be exempt despite the passage of time, the lack of enforcement action, or a prosecutor's decision not to file charges. *State, ex rel. Polovischak,* v. *Mayfield, supra,* syllabus; *State, ex rel. Thompson Newspapers, Inc.,* v. *Martin* (1989), 47 Ohio St. 3d 28, 546 N.E. 2d 939, paragraph two of the syllabus.

## II
### Review of Records

While these internal police investigations meet the first step of the definition of a "confidential law enforcement investigatory record" under R.C. 149.43(A)(2), a record must still meet the second step of the definition that "release of the record would create a high probability of disclosure" of any of four types of excepted material. See *State, ex rel. Polovischak,* v. *Mayfield, supra.*

In previously remanding this case, we ordered "further proceedings in accordance with the criteria and procedure noted herein." *NBC I, supra,* at 85, 526 N.E. 2d at 792. We held at paragraph four of the syllabus in *NBC I:* "When a governmental body asserts

that public records are excepted from disclosure and such assertion is challenged, the court must make an individualized scrutiny of the records in question. If the court finds that these records contain excepted information, this information must be redacted and any remaining information must be released."

Upon remand, the court of appeals must actually review the records and apply the relevant statutory exceptions to the records. An *in camera* inspection remains the best procedure. See *Henneman* v. *Toledo* (1988), 35 Ohio St. 3d 241, 243, 520 N.E. 2d 207, 210; *State, ex rel. Polovischak,* v. *Mayfield, supra,* at 54, 552 N.E. 2d at 638.

The principal exception to be applied is for specific investigatory work product, R.C. 149.43(A)(2)(c). We have already established guidance for applying this exception in *NBC I,* at paragraph three of the syllabus.

Cleveland further argues that the disputed records qualify as exempt "trial preparation records" under R.C. 149.43(A)(4). However, even as criminal investigations, the investigative materials do not so qualify. Cleveland failed to meet the "specifically compiled" statutory requirement. *NBC I, supra,* at 84, 526 N.E. 2d at 791; *State, ex rel. Zuern,* v. *Leis* (1990), 56 Ohio St. 3d 20, 564 N.E. 2d 81. "Moreover, broad application of the trial preparation exception to police criminal investigations negates the specifically drawn narrow exceptions to the General Assembly's mandated release of police records in R.C. 149.43(A)(2)." *State, ex rel. Coleman,* v. *Cincinnati* (1991), 57 Ohio St. 3d 83, 566 N.E. 2d 151, decided this day.

Thus, for the reasons stated in *NBC I, supra,* and *State, ex rel. Coleman,* v. *Cincinnati, supra,* we find the

court of appeals did not err in declining to apply the trial preparation record exception. Nonetheless, the determination as to whether statutory exceptions apply to disputed public records normally should be accomplished by an *in camera* inspection. *NBC I, supra,* paragraph four of the syllabus.

In addition to the work product and trial preparation record exceptions, Cleveland claims that other exceptions apply to some of these records. Cleveland claims exceptions for Bureau of Criminal Identification materials (R.C. 109.57[D]), information obtained from the federal government (Section 3789g, Title 42, U.S. Code), confidentiality of information, attorney-client privilege, medical records, and release of the name of an uncharged suspect or confidential informants or information source (R.C. 149.43[A][2][a] and [b]).

NBC asserts that Cleveland has waived any other exceptions to release of the records. Cleveland disputes NBC's claim of waiver. On remand, the court of appeals must consider these additional exceptions to public records release and any related waiver issue when it conducts the necessary *in camera* inspection.

### III
### Attorney Fees

NBC in its cross-appeal argues the court of appeals abused its discretion by not awarding attorney fees to NBC. However, "an award of attorney fees in public records cases is discretionary and is to be determined by the presence of a public benefit conferred by relator seeking the disclosure. Moreover, since the award is punitive, reasonableness and good faith of the respondent in refusing to make disclosure may also be considered." *State, ex rel. Multimedia, Inc.,* v. *Whalen* (1990), 51 Ohio St. 3d 99, 100,

554 N.E. 2d 1321, 1322. See *State, ex rel. Fox,* v. *Cuyahoga Cty. Hosp. System* (1988), 39 Ohio St. 3d 108, 529 N.E. 2d 443; *State, ex rel. Beacon Journal Publishing Co.,* v. *Ohio Dept. of Health* (1990), 51 Ohio St. 3d 1, 4, 553 N.E. 2d 1345, 1347.

In this case, the court of appeals found that NBC did not establish any public benefit resulting from release of the records and that Cleveland had a reasonable basis for its legal position. Cleveland released some records (offense/incident reports and booking or arrest cards) and submitted the remainder for an *in camera* inspection. The court of appeals also found NBC failed to establish the reasonableness of the claimed fees.

Under the circumstances, we find the court of appeals did not abuse its discretion in declining to award attorney fees to NBC. See *State, ex rel. Beacon Journal Publishing Co.,* v. *Ohio Dept. of Health, supra; State, ex rel. Beacon Journal Publishing Co.,* v. *Akron Metro. Hous. Auth.* (1989), 42 Ohio St. 3d 1, 535 N.E. 2d 1366.

The cause is remanded to the court of appeals for an *in camera* inspection of the disputed records and further proceedings consistent with this opinion.

For the foregoing reasons, the judgment of the court of appeals is affirmed in part, reversed in part, and the cause is remanded.

> *Judgment affirmed in part,*
> *reversed in part and*
> *cause remanded.*

MOYER, C.J., SWEENEY, HOLMES and RESNICK, JJ., concur.

WRIGHT, J., concurs in judgment only.

DOUGLAS, J., concurs in part and dissents in part.

H. BROWN, J., not participating.

DOUGLAS, J., concurring in part and dissenting in part. In general, and because there is still hope that these public records will be released to the public, I concur with Part II of the majority opinion. I dissent from Parts I and III of the majority opinion. These records do not, if they ever did, pertain to a "law enforcement" matter. They do not fit into the R.C. 149.43(A)(2)(c) exemption, especially given our recent decision in *State, ex rel. Clark,* v. *Toledo* (1990), 54 Ohio St. 3d 55, 560 N.E. 2d 1313. The boot-strap language used by the majority to support its misguided conclusion is just plain wrong. This is also the case on the question of attorney fees.

On its decision on the merits, the judgment of the court of appeals should be affirmed. We originally sent this case back to the court of appeals which, given our far-reaching opinion in the remand order and subsequent public records cases emanating from this court, made a decision and followed our dictates. Now that the learned judges of the court of appeals have done so, we again find something wrong because, as much as anything, a majority of this court is moving ever so slowly away from our previous enlightened decisions. I regret this trend and I have considerable empathy for the judges who, upon remand, will once again have to try to figure out what we mean.