[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 23.]

THE STATE EX REL. MASTER ET AL. *v.* CITY OF CLEVELAND ET AL.

[Cite as *State ex rel. Master v. Cleveland*, 1996-Ohio-228.]

*Mandamus to compel city prosecutor to investigate alleged misuse of a police computer by a police officer, to initiate an investigation into criminal allegations already being investigated by other law enforcement personnel, and to appoint a special prosecutor—Writ denied, when.*

(No. 95-1108—Submitted December 5, 1995—Decided March 4, 1996.)

IN MANDAMUS.

———————————

{¶ 1} In 1993, relator John H. Nix, a licensed securities broker, befriended relator John R. Master, an elderly retired physician and widower. Nix thereafter assisted Master in personal and business matters and moved into Master's Brookside Drive residence in Cleveland. Nix, Master, and relator Rebekah Deamon formed a partnership to build homes on undeveloped land owned by Master which was adjacent to his home. According to Master, his neighbors were upset about the prospective development of the property because they feared that African-Americans would move to Brookside Drive.

{¶ 2} During this period, Nix informed the F.B.I. that over $170,000 in bearer bonds owned by Master had been stolen by Master's relatives, Lillian and Orlando Autuori. According to relators, Sue Sazima, a Cleveland police officer who is also the grandniece of both Master and the Autuoris, became involved in the dispute between Nix and Master and their neighbors because Sazima wanted to assist the Autuoris and gain control of Master's assets. Relators allege that the Brookside Drive residents, Sazima, and others conspired to achieve their various objectives by attempting to have Nix implicated in defrauding Master to obtain control of his assets.

{¶ 3} Relators claim that, as part of the alleged conspiracy, telephone conversations conducted by relators Nix and Master from their Brookside Drive home were illegally intercepted and recorded in February and March 1994. On March 29, 1994, Nix was appointed conservator of the estate and person of Master by the probate court. On the same date, Nix learned about the alleged wiretapping.

{¶ 4} By letter dated May 6, 1994, relators' counsel requested that respondent Lieutenant Henry A. Tekancic, officer-in-charge of the Professional Conduct Internal Review Unit ("PCIR") of Cleveland's Division of Police, investigate Sazima's alleged misconduct. This request was made in connection with a federal lawsuit filed against Sazima and others. The letter alleged that Sazima had "abused her position as a police officer by using police records and accessing police computers to conduct an illegal and unauthorized investigation into the affairs" of relators Nix, Master, and Deamon. The federal complaint alleged illegal wiretapping by Sazima.

{¶ 5} The PCIR Unit is a specialized unit within the Cleveland Police Division which investigates felony criminal acts alleged to have been committed by division employees. Upon receiving the May 6, 1994 letter, Lieutenant Tekancic began an investigation into the allegation that Sazima had illegally accessed a police computer. The investigation was conducted as a criminal matter and was presented in January 1995 to respondent Carolyn Watts Allen, Chief Municipal Prosecutor for the city of Cleveland. On January 5, 1995, Allen concluded that there was insufficient evidence to establish probable cause that Sazima had committed a crime.

{¶ 6} Tekancic agreed with Allen's conclusion, based on evidence that Lieutenant Richard Petrencsik, head of the division's Fraud Unit, had asked Sazima to locate Master's living blood relatives as part of that unit's fraud investigation. While Lieutenant Petrencsik did not specifically instruct Sazima to use a police computer, he believed that Sazima was authorized to do so.

{¶ 7} After being provided affidavits of Nix and Master and evidence that Sazima had invoked her Fifth Amendment privilege against self-incrimination in a related lawsuit, Lieutenant Tekancic commenced an investigation of the wiretapping allegations in March 1995. This criminal investigation is still ongoing and is being conducted jointly by the PCIR Unit and the Cuyahoga County Prosecuting Attorney's Office.

{¶ 8} In an April 20, 1995 letter, relators' counsel informed Chief Prosecutor Allen that Lieutenant Petrencsik had testified that he had not authorized Sazima to use the police computer to locate Master's blood relatives. Relators' counsel demanded that Allen conduct an immediate investigation into "Tekancic's falsifying" of the report which cleared Sazima of misusing a police computer, Sazima's "illegal and unauthorized investigation," her "illegal and unauthorized use of police department resources," her "illegal wiretapping," and the illegal use and disclosure of the contents of wiretap tapes by Sazima and other police personnel. Allen refused relators' request.

{¶ 9} In May 1995, relators requested that all respondents, various city officials including Lieutenant Tekancic and Chief Prosecutor Allen, allow relators to inspect certain records pursuant to Ohio's Public Records Act, R.C. 149.43. Relators specifically requested to inspect (1) "[a]ny and all documents pertaining to the investigation presently being conducted by the Internal Affairs Division *** relating to the interception and recording of telephone conversations of [relators] and other persons during the time period of February and March, 1994" from telephones located at the Brookside Drive address, and (2) "[a]ny and all tape recordings or transcripts of tape recordings of telephone conversations of [relators] and other persons intercepted" from the Brookside Drive residence during the same period. Relators also requested from Lieutenant Tekancic all witness statements given in connection with the police wiretapping investigation and further requested

from Chief Prosecutor Allen her file and records as to the police investigation into Sazima's alleged misuse of a police computer.

{¶ 10} According to Lieutenant Tekancic, the only items in the custody of the PCIR Unit responsive to relators' public records requests "are those collected or generated in connection with the ongoing criminal investigation" into the wiretapping allegations. Chief Prosecutor Allen has only one responsive document in her custody, *i.e.*, her January 1995 opinion concluding that there was insufficient evidence to establish probable cause that Sazima had committed a crime in accessing a police computer. A copy of Allen's opinion has been provided to relators. Cleveland Director of Public Safety William Denihan has a copy of Lieutenant Tekancic's PCIR Unit report summarizing the status of the criminal investigation regarding the alleged wiretapping. None of the remaining individual respondents has possession or custody of any of the requested records.

{¶ 11} In June 1995, relators, Master, Nix, Deamon, Richard C. Klein, and accountant William Weinkamer, instituted this action seeking writs of mandamus (1) to compel Chief Prosecutor Allen to conduct and complete an investigation into the alleged misconduct of Tekancic, Sazima, and other city employees, and (2) to compel respondents to allow relators to inspect and copy the requested records. In conjunction with relators' public records claim, they also request "appointment of a Special Prosecutor to investigate and prosecute the wiretappers, and those who have concealed the wiretapping." We issued an alternative writ. 72 Ohio St.3d 1536, 650 N.E.2d 477. The cause is now before the court on the submitted evidence and briefs.

_____

*Harold Pollock Co., L.P.A.*, and *Harold Pollock*, for relators.

*Sharon Sobol Jordan*, Cleveland Director of Law, and *Kathleen A. Martin*, Chief Trial Counsel, for respondents.

_____

4

***Per Curiam.***

**{¶ 12}** As a preliminary matter, respondents have moved to strike relators' lengthy complaint on the basis that the complaint does not contain a short and plain statement of relators' claims as required by Civ.R. 8(A). Respondents contend that relators' complaint is replete with "redundant, immaterial, impertinent, or scandalous matter." Civ.R. 12(F). Respondent Allen has also moved to dismiss relators' claim against her to investigate various matters, pursuant to Civ.R. 12(B)(6), failure to state a claim upon which relief can be granted.

**{¶ 13}** While Civ.R. 8(A) generally requires only notice pleading, S.Ct.Prac.R. X(4)(B) modifies that standard by mandating the pleading of specific facts rather than unsupported conclusions in original actions filed in this court. However, S.Ct.Prac.R. X(4)(B) does not grant the parties license to plead "redundant, immaterial, impertinent, or scandalous matter." Nevertheless, we have issued an alternative writ and the case has been submitted on the evidence and briefs. An alternative writ recognizes that relators' complaint "may have merit." Staff and Committee Notes to S.Ct.Prac.R. X. Therefore, respondents' motions are overruled. See S.Ct.Prac.R. X(2) ("All original actions shall proceed under the Ohio Rules of Civil Procedure, unless clearly inapplicable."). We therefore consider the merits of this case on the submitted evidence and briefs.

**{¶ 14}** Relators assert in their first proposition of law that this court should issue a writ of mandamus to compel respondent Allen to investigate Sazima's alleged misuse of a police computer, Tekancic's alleged falsification of his investigative report, and the alleged wiretapping. In order to be entitled to a writ of mandamus, relators must establish (1) a clear legal right to the requested investigations, (2) a corresponding clear legal duty on the part of Allen to conduct the requested investigations, and (3) the lack of an adequate remedy in the ordinary course of law. *State ex rel. Donaldson v. Alfred* (1993), 66 Ohio St.3d 327, 329, 612 N.E.2d 717, 719.

**{¶ 15}** A prosecuting attorney will not be compelled to prosecute a complaint except when the failure to prosecute constitutes an abuse of discretion. *State ex rel. Squire v. Taft* (1994), 69 Ohio St.3d 365, 368, 632 N.E.2d 883, 885; *State ex rel. Murr v. Meyer* (1987), 34 Ohio St.3d 46, 47, 516 N.E.2d 234, 235. Therefore, the decision whether to prosecute is discretionary, and not generally subject to judicial review. *Ohio Assn. of Pub. School Emp., Chapter 643, AFSCME, AFL-CIO v. Dayton City School Dist. Bd. of Edn.* (1991), 59 Ohio St.3d 159, 160, 572 N.E.2d 80, 82.

**{¶ 16}** Relators contend that Allen abused her discretion in failing to prosecute Sazima for illegal use of a police computer for nonlaw-enforcement purposes and for failing to prosecute Tekancic for falsifying his investigative report clearing Sazima of that charge. An abuse of discretion connotes a decision that is unreasonable, arbitrary or unconscionable. *Gen. Motors Corp. v. Tracy* (1995), 73 Ohio St.3d 29, 32, 652 N.E.2d 188, 190. The evidence indicates that Sazima was officially instructed to locate Master's living relatives as part of a fraud unit investigation and that Sazima was authorized to use the police computer. Therefore, Allen could justifiably conclude that Sazima did not misuse the police computer and that Tekancic did not falsify his report on the allegation against Sazima. Allen did not abuse her discretion in refusing to reopen the investigation of Sazima or in failing to prosecute Tekancic.

**{¶ 17}** Relators also contend that Allen abused her discretion in refusing to investigate the wiretapping allegations as specified in relators' April 20, 1995 letter to Allen. However, at the time, a joint criminal investigation was being conducted by the PCIR Unit and the Cuyahoga County Prosecuting Attorney. Allen had no duty to initiate an investigation into criminal allegations that were already being investigated by other law enforcement personnel.

**{¶ 18}** Relators finally request that this court appoint a special prosecutor from outside Cleveland to investigate and prosecute the alleged wiretappers.

6

Relators' goal could be achieved by motion in the Cuyahoga County Court of Common Pleas. Courts of common pleas possess inherent power to appoint special prosecutors in criminal matters. See *State ex rel. Johnson v. Talikka* (1994), 71 Ohio St.3d 109, 642 N.E.2d 353; *State ex rel. Williams v. Zaleski* (1984), 12 Ohio St.3d 109, 12 OBR 153, 465 N.E.2d 861; *State v. Bunyan* (1988), 51 Ohio App.3d 190, 555 N.E.2d 980. Since relators have an adequate remedy at law as to their request for a special prosecutor, extraordinary relief in mandamus is not warranted on this basis either. Relators' first proposition of law is overruled.

{¶ 19} Relators assert in their second proposition of law that they are entitled to a writ of mandamus compelling respondents to disclose the public records in their possession. Relators' mandamus claim is pursuant to R.C. 149.43, Ohio's Public Records Act. Mandamus is the appropriate remedy to compel compliance with R.C. 149.43. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 426, 639 N.E.2d 83, 89. "Exceptions to disclosure are strictly construed against the custodian of the public records, and the burden to establish an exception is on the custodian." *State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 247, 643 N.E.2d 126, 128.

{¶ 20} Relators rely on *Henneman v. Toledo* (1988), 35 Ohio St.3d 241, 520 N.E.2d 207, syllabus, where the court held that "[r]ecords and information compiled by an internal affairs division of a police department are subject to discovery in civil litigation arising out of alleged police misconduct if, upon an *in camera* inspection, the trial court determines that the requesting party's need for the material outweighs the public interest in the confidentiality of such information." Relators contend that such records are discoverable regardless of whether the investigation is pending or closed.

{¶ 21} In *Henneman*, the plaintiff in a civil suit alleging civil rights violations requested the production of various documents which the defendants claimed were confidential, privileged, and not subject to discovery because the

records were compiled by the police department in its internal investigation of alleged police misconduct. This court explicitly held that the requested documents were subject to discovery in that case notwithstanding R.C. 149.43(A)(2)'s exemption for "[c]onfidential law enforcement investigatory record[s]":

"In arguing that internal affairs investigatory files are shielded from disclosure in this case by [R.C. 149.43(A)(2)], appellants rely heavily on cases from this court holding that law enforcement investigation records are exempt from the public disclosure requirements of R.C. 149.43. *** Appellants' reliance is misplaced. These cases stand for the proposition that the law enforcement records described in R.C. 149.43(A)(2) are not subject to the requirement of R.C. 149.43(B) that all public records must be made available to the general public upon request at any reasonable time. Appellee herein is not contending that the records she requests must be made available to her as a member of the general public. R.C. 149.43(A)(2) only operates to exempt the records described therein from the requirement of availability to the general public on request. It does not protect records from a proper discovery request in the course of litigation, if such records are otherwise discoverable. Thus, R.C. 149.43 is not dispositive." *Id.*, 35 Ohio St.3d at 244-245, 520 N.E.2d at 210-211.

{¶ 22} *Henneman*'s balancing test cannot be applied to public records requests under R.C. 149.43 because "'the General Assembly has already weighed and balanced the competing public policy considerations between the public's right to know how its state agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure.'" *State ex rel. Thomas, supra*, 71 Ohio St.3d at 249, 643 N.E.2d at 130, quoting *State ex rel. James v. Ohio State Univ.* (1994), 70 Ohio St.3d 168, 172, 637 N.E.2d 911, 913-914; see, also, *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 143-144, 647 N.E.2d 1374, 1378. *Henneman* is therefore not controlling as to relators' R.C. 149.43 claims. See *State ex rel. Multimedia, Inc. v. Whalen* (1990), 48 Ohio St.3d

41, 41-42, 549 N.E.2d 167, 167-168. However, *Henneman* may be applicable in the civil lawsuit which relators have filed which alleges the same police misconduct.

**{¶ 23}** Addressing the merits of relators' public records claim, we find that respondents' evidence indicates that except for Tekancic, Denihan, and Allen, none of the respondents has possession of any of the requested records. Allen has already provided relators with the only responsive record that is in her custody. Consequently, relators' public records claims against the respondents, except Tekancic and Denihan, are without merit. See *State ex rel. Fant v. Mengel* (1991), 62 Ohio St.3d 197, 198, 580 N.E.2d 1085, 1086 ("The Public Records Act, R.C. 149.43, does not require that a public office create new documents to meet a requester's demand.").

**{¶ 24}** Respondents contend that the requested records are excepted from disclosure as specific investigatory work product under R.C. 149.43(A)(2)(c). "Except as required by Crim.R. 16, information assembled by law enforcement officials in connection with a probable or pending criminal proceeding is, by the work product exception found in R.C. 149.43(A)(2)(c), excepted from required release as said information is compiled in anticipation of litigation." *Steckman, supra*, 70 Ohio St.3d 420, 639 N.E.2d 83, at paragraph five of the syllabus. In *State ex rel. Police Officers for Equal Rights v. Lashutka* (1995), 72 Ohio St.3d 185, 188, 648 N.E.2d 808, 810, this court clarified *Steckman*, holding that "*Steckman* applies to actual pending or highly probable *criminal* prosecutions and defines, in *that* context, the very narrow exceptions in R.C. 149.43." (Emphasis *sic.*)

**{¶ 25}** In the case at bar, respondents' evidence establishes that an active and ongoing criminal investigation is being jointly conducted by the PCIR Unit of the Cleveland Police Division and the Cuyahoga County Prosecuting Attorney. A criminal investigation of a police officer by the PCIR unit is conducted in a manner

similar to other criminal investigations "aimed at possible prosecution," and could result in criminal charges.

{¶ 26} There is no evidence that criminal charges against police officers or other individuals involved in the alleged wiretapping against relators are either "pending" or "highly probable" as required for application of the work product exception. See *Steckman, supra*, at paragraph five of the syllabus, and *Police Officers for Equal Rights, supra,* 72 Ohio St.3d at 188, 648 N.E.2d at 810. Here, the evidence shows only that criminal charges are possible. R.C. 149.43(A)(2)(c) does not except the requested records.

{¶ 27} Nevertheless, the evidence establishes the applicability of a separate, albeit unargued, exception. See *State ex rel. Plain Dealer Publishing Co. v. Cleveland* (1996), ___ Ohio St.3d ___, ___ N.E.2d ___ (exceptions to disclosure are not affirmative defenses, and the city's failure to raise exceptions does not prevent the court from considering them). R.C. 149.43(A)(2)(a) is the exception for uncharged suspects:

"'Confidential law enforcement investigatory record' means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of ***:

"(a) The identity of a suspect who has not been charged with the offense to which the record pertains ***."

{¶ 28} R.C. 149.43(A)(2)(a) excepts records that identify persons who have neither been charged with nor arrested for an offense. *State ex rel. Moreland v. Dayton* (1993), 67 Ohio St.3d 129, 130, 616 N.E.2d 234, 236; *State ex rel. Outlet Communications, Inc. v. Lancaster Police Dept.* (1988), 38 Ohio St.3d 324, 328, 528 N.E.2d 175, 178. "[O]ne of the purposes for [this] public records exception *** is to avoid the situation in which the release of confidential law enforcement investigatory records would subject a person to adverse publicity where he may

otherwise never have been identified with the matter under investigation." *State ex rel. Thompson Newspapers, Inc. v. Martin* (1989), 47 Ohio St.3d 28, 30, 546 N.E.2d 939, 942. The uncharged suspect exception applies despite the passage of time, the lack of enforcement action, or a prosecutor's decision not to file formal charges. *Moreland, supra*, 67 Ohio St.3d at 130-131, 616 N.E.2d at 236; *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland* (1991), 57 Ohio St.3d 77, 80, 566 N.E.2d 146, 149. It is thus not restricted to current, uncharged suspects. *State ex rel. Sweeney v. Parma Hts.* (1994), 93 Ohio App.3d 349, 352, 638 N.E.2d 614, 617. Even releasing information concerning uncharged suspects in inactive criminal investigations might "compromise later efforts to reopen and solve those inactive cases." *Moreland, supra*, 67 Ohio St.3d at 131, 616 N.E.2d at 236. As stated by Tekancic in his affidavit, "it is unfair to publicly disclose that someone is a suspect in a criminal investigation until such time as that person may be criminally charged."

**{¶ 29}** Relators specifically request to inspect and copy the PCIR Unit investigative records in order "*to identify all of the persons* who have committed wiretapping offenses against them, and who have been involved in the conspiracy to conceal the wiretapping \*\*\*." (Emphasis added.) However, under R.C. 149.43(A)(2)(a), relators are not entitled to disclosure of the requested records which identify uncharged suspects in the alleged wiretapping. Therefore, relators are only entitled to those portions of the requested records which do not create a high probability of disclosure of the identity of uncharged suspects, *e.g.*, any tape recordings of relators' telephone conversations.

**{¶ 30}** Relators request that the court conduct an *in camera* inspection of the subject records pursuant to *Henneman*. As previously discussed, *Henneman* is inapposite here. However, normally, "[w]hen a governmental body asserts that public records are excepted from disclosure and such assertion is challenged, the court must make an individualized scrutiny of the records in question. If the court

finds that these records contain excepted information, this information must be redacted and any remaining information must be released." *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786, paragraph four of the syllabus; see, also, *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland, supra*, 57 Ohio St.3d at 81, 566 N.E.2d at 150. Here, an *in camera* review of the subject records is appropriate in order to determine which portions are properly redacted under the uncharged suspect exception, R.C. 149.43(A)(2)(a), and which portions must be disclosed.

**{¶ 31}** Accordingly, for the foregoing reasons, we order respondents Tekancic and Denihan to submit the subject records under seal, and allow the parties to file briefs on the applicability of the uncharged suspect exception. Relators' requests for writs of mandamus are, in all other respects, denied.

*Judgment accordingly.*

MOYER, C.J., WRIGHT, RESNICK and COOK, JJ., concur.

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur in judgment only.

---