[Cite as *State ex rel. Woznak v. Cuyahoga Cty. Prosecutor's Office*, 2026-Ohio-2191.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE EX REL. GEORGE B.
WOZNAK,                                                      :

     Relator,                                           :                    No. 116089

     v.                                                      :

CUYAHOGA COUNTY                                   :
PROSECUTOR'S OFFICE,
                                                             :
     Respondent.

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** PETITION DISMISSED
**DATED:** June 9, 2026

---

Writ of Mandamus
Motion No. 593345
Order No. 594412

---

### *Appearances:*

George B. Woznak, *pro se*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Anthony T. Miranda, Assistant Prosecuting
Attorney, *for respondent*.

EMANUELLA D. GROVES, J.:

{¶ 1} Relator George Woznak, pro se, has filed an amended petition for a writ

of mandamus, seeking to compel respondent Cuyahoga County Prosecutor's Office

"to investigate and prosecute" alleged criminal offenses described in an affidavit in support of criminal complaint Woznak filed with the Cuyahoga County Common Pleas Court pursuant to R.C. 2935.09(D) and 2935.10(A).

{¶ 2} For the reasons that follow, we grant respondent's motion to dismiss Woznak's amended petition.

## I. Factual and Procedural Background

{¶ 3} Woznak's wife, Diana Woznak ("Diana"), died in October 2019. On June 20, 2025, Woznak filed an "affidavit in support of criminal complaint" in the Cuyahoga County Common Pleas Court, *In* re [*C.W.*], Cuyahoga C.P. No. CR-25-703150-A, seeking the prosecution of C.W., a physician who had treated Diana (the "affidavit of criminal complaint").

{¶ 4} Pursuant to R.C. 2935.09(D), "[a] private citizen having knowledge of the facts who seeks to cause an arrest or prosecution . . . may file an affidavit charging the offense committed . . . for the purpose of review to determine if a complaint should be filed by the prosecuting attorney." R.C. 2935.10(A) sets forth the procedures that must be followed if a private citizen files an affidavit alleging a felony offense. If the affidavit charges the commission of a felony, "unless the judge, clerk, or magistrate has reason to believe that it was not filed in good faith, or the claim is not meritorious," he or she "shall forthwith issue a warrant for the arrest of the person charged in the affidavit, and directed to a peace officer; otherwise the judge, clerk, or magistrate shall forthwith refer the matter to the prosecuting

attorney . . . for investigation prior to the issuance of warrant." R.C. 2935.10(A); *State ex rel. Becker v. Faris*, 2021-Ohio-1127, ¶ 19 (12th Dist.).

{¶ 5} In his affidavit of criminal complaint, Woznak alleged that C.W. committed involuntary manslaughter in violation of R.C. 2903.04(A) and reckless homicide in violation of R.C. 2903.041 by, among other things, failing to alert Diana that her EKG results revealed she had suffered an "ST elevation myocardial infarction (STEMI), a severe and dangerous type of heart attack" and discharging her without directing her to receive emergency medical care or other urgent cardiac treatment when C.W. treated her at the Cleveland Clinic Independence Family Health Center on October 22, 2019. Diana died five days later because of cardiac arrest. In support of his affidavit, Woznak attached copies of excerpts from Diana's medical records, including "physician clinical notations" that the cardiologists who later treated Diana allegedly "attributed her death to the delay in receiving urgent medical treatment for the STEMI heart attack," a text message he received from Diana in which she reported to Woznak that her EKG on October 22 had been "good" and "normal," and an unnotarized "affidavit" from cardiologist Marc Cohen, M.D., who opined that C.W. deviated from the "reasonable accepted standard of care . . . by failing to investigate and treat Diana" and that "as a consequence, [she] suffered pain and suffering, incurred medical bills and ultimately died."

{¶ 6} On July 22, 2025, the Administrative Judge of the Cuyahoga County Common Pleas Court referred the matter to the Cuyahoga County Prosecutor's Office "for further investigation" pursuant to R.C. 2935.10(A) (the "July 22, 2025

journal entry"). On September 23, 2025, an assistant prosecuting attorney and supervisor of the major trial, homicide unit, with the Cuyahoga County Prosecutor's Office, sent a letter to Woznak, stating that, "[a]fter a thorough review of the documents filed with the court pursuant to R.C. 2935.10(A) and speaking with the Chief Medical Examiner, it has been determined that no felony charges have been committed and therefore charges will not be pursued" (the "September 23, 2025 letter").

{¶ 7} On February 2, 2026, Woznak, pro se, filed a petition for a writ of mandamus against respondent. After respondent filed a motion to dismiss the petition, Woznak was granted leave to file an amended petition.

{¶ 8} In his amended petition for a writ of mandamus, filed, pro se, on March 10, 2026, Woznak seeks a writ of mandamus to compel respondent "to fulfill its statutory duty under Ohio law by conducting a thorough and proper investigation and prosecuting the criminal offenses listed in Relator's affidavit of criminal complaint." Woznak alleges that his affidavit of criminal complaint charges C.W. with involuntary manslaughter under R.C. 2903.04(A) and reckless homicide under R.C. 2903.041(A) based on C.W.'s violation of R.C. 2903.33(C)(1), 2903.34(A)(2), and 4731.22(B)(6) and that respondent's "refusal" to investigate and prosecute the offenses described in Woznak's affidavit of criminal complaint "constitutes abuse of discretion, bias, and arbitrariness."

{¶ 9} Specifically, Woznak alleges that respondent did not perform its legal duty to investigate because it "did not interview Relator to examine, evaluate, and

discern the broad range of the undisputed evidence presented in the affidavit of criminal complaint," "[t]he substance of the extensive evidence presented in the affidavit of criminal complaint was not addressed in the [September 23, 2025] letter," and that respondent's "decision to seek input" from the Cuyahoga County Chief Medical Examiner, Dr. Thomas Gilson, in determining that charges would not be pursued, was "not rational and disregards and distorts relevant facts" because Dr. Gilson's medical training and experience are "solely in pathology" and he does not "diagnose, treat, or manage patient care."

{¶ 10} Woznak further alleges that R.C. 4731.22(B)(6), which authorizes the state medical board to take disciplinary action against a physician who fails to conform to minimal standards of care, "codifies the physician's legal duty to adhere to the accepted standards of medical practice" and that "[a] willful or reckless failure to meet these standards may give rise not only to administrative sanctions but also to criminal liability if the breach results in patient harm or death"; that C.W.'s "willful refusal to provide necessary and appropriate medical treatment for a life-threatening condition constitutes a criminally culpable omission under Ohio law" in violation of R.C. 2903.33(C)(1) and 2903.34(A)(2); and that "[w]hen a physician's omission violates a statutory duty under [R.C.] 2903.33(C)(1) and 2903.34(A)(2) and that omission directly causes death, it may satisfy the elements of involuntary manslaughter" and/or reckless homicide.

{¶ 11} In support of his petition, Woznak attached copies of his affidavit of criminal complaint, the July 22, 2025 journal entry, the September 23, 2025 letter,

and documents he described as: (1) "Standards for immediate reperfusion therapy for patients experiencing an acute myocardial infarction established by the American Heart Association and the American College of Cardiology," (2) "EKG overread standards established by the Joint Commission for Accreditation of Healthcare Organizations and the Centers for Medicare & Medicaid Services," and (3) "Biography of Dr. Thomas Gilson, Cuyahoga County Chief Medical Examiner, and a description of the pathology medical curriculum offered by the University of Cincinnati Medical School, where Dr. Gilson received his medical training," which he incorporated by reference.

{¶ 12} On March 13, 2026, respondent filed a motion to dismiss Woznak's amended petition pursuant to Civ.R. 12(B)(6) for failure to state a claim for which relief can be granted. Respondent contends that Woznak's amended petition should be dismissed on the grounds that (1) the September 23, 2025 letter shows respondent performed an investigation, (2) the decision whether or not to bring criminal charges is discretionary, (3) Woznak failed to identify a predicate felony offense that would support a charge of involuntary manslaughter, and (4) prosecution for reckless homicide would be time-barred by the applicable statute of limitations.[1]

---

[1] Respondent also contends that to the extent Woznak "has attempted to have a judge issue an arrest warrant pursuant to R.C. 2935.10," he has an adequate remedy by appealing the denial of his request by the administrative judge, i.e., a judge's decision not to issue an arrest warrant is reviewable on appeal. However, Woznak's amended petition does not seek to compel a judge to issue an arrest warrant; he seeks to compel the prosecutor to conduct a "thorough and proper investigation" and to prosecute the criminal

{¶ 13} Woznak filed an opposition to the motion to dismiss in which he argued that he had alleged sufficient facts in his amended petition to establish that he is entitled to a writ of mandamus.

## II. Law and Analysis

### A. Standard for Dismissal under Civ.R. 12(B)(6)

{¶ 14} "'Dismissal of a mandamus action under Civ.R. 12(B)(6) is appropriate if, after presuming all factual allegations in the complaint to be true and drawing all reasonable inferences in the relator's favor, it appears beyond doubt that he can prove no set of facts entitling him to a writ of mandamus.'" *State ex rel. Roush v. Hickson*, 2024-Ohio-4741, ¶ 8, quoting *State ex rel. A.N. v. Cuyahoga Cty. Prosecutor's Office*, 2021-Ohio-2071, ¶ 8. "'However, unsupported legal conclusions, even when cast as factual assertions, are not presumed true for purposes of a motion to dismiss.'" *State ex rel. Roush* at ¶ 8, quoting *State ex rel. Martre v. Reed*, 2020-Ohio-4777, ¶ 12.

### B. Standard for a Writ of Mandamus

{¶ 15} A writ of mandamus is "a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station." R.C. 2731.01. It is "an extraordinary remedy that is to be exercised with caution and only when the right is clear." *State ex rel. Tobias v. Fuerst*, 2022-Ohio-

offenses alleged in his affidavit of criminal complaint. Accordingly, we do not address that issue further here.

3556, ¶ 5 (8th Dist.).  Mandamus "should not issue in doubtful cases."  *Id.*  To be entitled to mandamus relief, the relator must establish by clear and convincing evidence that (1) he or she has a clear legal right to the requested relief, (2) the respondent has a clear legal duty to provide that relief, and (3) the lack of an adequate remedy in the ordinary course of the law.  *State ex rel. Schwarzmer v. Mazzone*, 2025-Ohio-1246, ¶ 10; *State ex rel. Duncan v. Chambers-Smith*, 2025-Ohio-978, ¶ 10.

{¶ 16} Because, for the reasons that follow, it appears beyond doubt that Woznak cannot prevail on his mandamus claim, we grant respondent's motion to dismiss Woznak's amended petition.

{¶ 17} Woznak asserts that he is entitled to a writ of mandamus because respondent did not conduct "a thorough and proper investigation" into the allegations against C.W.  He argues that because "[t]here were no witness interviews, no medical expert reviews, no medical record analysis . . . no communication with Relator regarding the broad range of undisputed evidence contained in the affidavit o[f] criminal complaint," and no "investigative records" or "documentary evidence reflecting substantive evaluation," respondent did not comply with its statutory duty under R.C. 2935.10(A) to "meaningfully evaluate the matter."

{¶ 18} R.C. 2935.09 does not mandate prosecution of all offenses charged by affidavit.  *Nikooyi v. Affidavit of Criminal Complaint*, 2020-Ohio-192, ¶ 9 (8th Dist.), citing *State ex rel. Boylen v. Harmon*, 2006-Ohio-7, ¶ 6; *State ex rel. Evans v. Columbus Dept. of Law*, 83 Ohio St.3d 174, 175 (1998).  "In general, a prosecutor

has no clear duty to prosecute an offense alleged in a charging affidavit." *State ex rel. A.N. v. Cuyahoga Cty. Prosecutor's Office*, 2021-Ohio-2071, ¶ 9. "Prosecutors have wide discretion in deciding whether to prosecute a particular matter." *State ex rel. Bunting v. Styer*, 2016-Ohio-5781, ¶ 18; *see also State ex rel. Master v. Cleveland*, 75 Ohio St.3d 23, 27 (1996) ("[T]he decision whether to prosecute is discretionary, and not generally subject to judicial review."). "There are numerous factors that contribute to the decision to prosecute, including causation, culpability, possible defenses, the motives of the complainant, attempts to use the criminal justice system to enhance civil actions, the seriousness of the offense, the harm caused by the offense, priorities, more pressing matters and the limited resources of the governmental office." *State ex rel. April Mgmt., Ltd v. Mayfield Hts.*, 2013-Ohio-5465, ¶ 12 (8th Dist.).

{¶ 19} "The prosecutor has the discretion to determine whether he [or she] could prove the alleged offense beyond a reasonable doubt with the evidence provided." *State ex rel. Bunting* at ¶ 19. Further, prosecutors, in their discretion, ""may decide, for a myriad of reasons, not to prosecute on certain charges notwithstanding that sufficient evidence exists to support a conviction."" *State ex rel. Becker*, 2021-Ohio-1127, at ¶ 29 (8th Dist.), quoting *State v. Conklin*, 1995 Ohio App. LEXIS 1126, *8-9 (12th Dist. Mar. 27, 1995), quoting *State ex rel. Tipton v. Schisler*, 1991 Ohio App. LEXIS 4510, *10 (4th Dist. Sept. 25, 1991). "'Only when the failure to prosecute constitutes an abuse of discretion will a prosecutor be compelled to prosecute.'" *State ex rel. A.N.* at ¶ 9, quoting *State ex rel. Capron v. Dattilio*,

2016-Ohio-1504, ¶ 4. An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Master*, 75 Ohio St.3d at 27.

{¶ 20} Once the Administrative Judge referred Woznak's affidavit of criminal complaint to respondent for review, respondent was required to conduct an "investigation" into the allegations contained therein. R.C. 2935.10 does not define "investigation." In *State ex rel. Becker*, 2021-Ohio-1127 (12th Dist.), the Twelfth District considered the meaning of the term as used in R.C. 2935.10(A) as follows:

> The term "investigation" has been defined as "the action or process of investigating." *Webster's Third New International Dictionary* 1189 (1993). The term has also been defined as a "detailed examination" and a "searching inquiry." *Id.* Similarly, the term "investigate" has been defined to mean "to observe or study closely," as well as to "inquire into systematically." *Id.* The term "investigate" has also been defined as "to observe or study by close examination and systematic inquiry." *Merriam-Webster's Online: Dictionary and Thesaurus*, https://www.merriamwebster.com/dictionary/investigate (accessed Mar. 18, 2021). The term "investigate" has further been defined as "to make an official inquiry." *Black's Law Dictionary* 844 (8th Ed.2004).
>
> The term "inquiry" has been defined to mean "[a] request for information, either procedural or substantive." *Id.* at 808. The term "inquiry" has also been defined to mean "the act or an instance of seeking truth, information, or knowledge about something" and the "examination into facts and principles." *Webster's Third New International Dictionary* 1167 (1993). The term "inquiry" has further been defined as "a systematic investigation often of a matter of public interest." *Merriam-Webster's Online: Dictionary and Thesaurus*, https: //www.meriam-webster.com/dictionary/inquiry (accessed Mar. 18, 2021).
>
> *State ex rel. Becker* at ¶ 24-25.

{¶ 21} In *State ex rel. Becker*, the relator filed a complaint for a writ of mandamus to compel the Clermont County Prosecutor to "act in accordance with his clear legal duty" under R.C. 2935.10(A) and conduct a "formal and/or systematic investigation" into purported "criminal behavior" by Ohio Governor Mike DeWine in his handling of the COVID-19 pandemic. *Id.* at ¶ 3, 6.

{¶ 22} The relator argued that the prosecutor did not conduct an "investigation" into the allegations against Governor DeWine because the prosecutor's investigation was (1) completed within five hours, an "extremely short time frame," and (2) did not produce any "investigatory records" from the prosecutor's office, the Ohio Bureau of Criminal Investigation, or the Clermont County Sheriff's Office. *Id.* at ¶ 21. The Twelfth District held that because "no private citizen affidavit is, or should be, exactly the same," "the time and energy a prosecutor must exert to investigate one private citizen affidavit could, and oftentimes will, vary greatly from the time and energy needed to investigate the allegations set forth in a different private citizen affidavit." *Id.* at ¶ 26. The court further indicated that the prosecutor's "investigation" into the allegations set forth in relator's private citizen affidavit did not have to last any set period of time and did not have to result in the creation of any investigatory records. *Id.* Given the nature of the relator's allegations in that case, i.e., alleging crimes such as terrorism, making a terroristic threat, inducing panic, and bribery against Governor DeWine for his handling of the COVID-19 pandemic, the court held that the statutorily required "investigation" into the allegations of relator's private citizen affidavit "required

nothing more than a cursory review of the affidavit, coupled with the applicable criminal statutes," to determine that relator's claims against Governor DeWine were "wholly meritless and lacked probable cause." *Id.* at ¶ 26-27.

{¶ 23} In his affidavit of criminal complaint, Woznak sought to have C.W. investigated and prosecuted for involuntary manslaughter under R.C. 2903.04(A) and reckless homicide under R.C. 2903.041(A). As alleged in Woznak's amended petition, respondent declined to prosecute after reviewing the documents filed with the common pleas court pursuant to R.C. 2935.10(A), speaking with the chief medical examiner, and determining that no felony charges had been committed.[2]

{¶ 24} In his opposition to respondent's motion to dismiss, Woznak concedes that any prosecution for reckless homicide would be barred by the

_____

[2] Woznak cites *State ex rel. Ney v. Niehaus*, 33 Ohio St.3d 118, 119 (1987), *State ex rel. Levin v. Sheffield Lake*, 70 Ohio St.3d 104, 110 (1994), and "*State ex rel. Evans v. Columbus Dept. of Law*, 83 Ohio App.3d 174, 176-77 (10th Dist. 1992)," for the propositions that (1) "[a] complete failure to thoroughly and properly examine and evaluate the evidence, interview witnesses, consult relevant medical experts, or otherwise evaluate the matter constitutes a failure to perform a legally mandated function," (2) "Ohio law recognizes that mandamus may issue to compel performance of such duty," and (3) "[a] conclusory claim of 'internal review' unsupported by any indicia of decision-making is legally indistinguishable from a failure to act and constitutes constructive nonfeasance." These cases do not support such propositions. *State ex rel. Ney* involved the denial of a writ of mandamus seeking to compel a trial judge to grant the prosecutor's request for transactional immunity for a witness under R.C. 2945.44. *State ex rel. Levin* involved the denial of writs of mandamus, prohibition, and procedendo to compel a city to commence appropriation proceedings against relators' property. And "*State ex rel. Evans v. Columbus Dept. of Law*, 83 Ohio App.3d 174, 176-77 (10th Dist. 1992)" is not a valid citation. In *State ex rel. Evans v. Columbus Dept. of Law*, 83 Ohio St.3d 174 (1998), the Ohio Supreme Court affirmed the court of appeals' judgment dismissing a complaint for a writ of mandamus on the grounds that (1) R.C. 2935.10 does not place any duty upon city prosecutors to prosecute misdemeanors charged by affidavit filed under R.C. 2935.09 and (2) the complaint did not allege sufficient facts evidencing that the prosecutor abused her discretion by determining that the charges lacked probable cause.

applicable statute of limitations. Accordingly, we do not further address that issue here. *See, e.g., State ex rel. Dominguez v. State*, 2011-Ohio-3091, ¶ 3 ("'[M]andamus will not issue to compel a vain act.'"), quoting *State ex rel. Strothers v. Turner*, 79 Ohio St.3d 272, 274 (1997).

{¶ 25} With respect to his claim that C.W. is subject to prosecution for involuntary manslaughter, Woznak alleges that R.C. 2903.33(C)(1), 2903.34(A)(2), and 4731.22(B)(6) provide a basis for prosecuting C.W. for involuntary manslaughter under R.C. 2903.04(A), i.e., that R.C. 2903.04(A) "translate[s] the omissions of duty into potential criminal offenses."

{¶ 26} R.C. 2903.04(A) states: "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit *a felony*." (Emphasis added.)[3] However, Woznak has not identified any predicate felony C.W. is alleged to have committed.

{¶ 27} R.C. 4731.22(B)(6) authorizes the state medical board to take disciplinary action against a physician who fails to conform to minimal standards of care; it does not set forth a criminal offense.[4]

---

[3] In his amended petition, Woznak asserts that "Ohio Rev. Code § 2903.04(A) defines involuntary manslaughter as causing the death of another as a proximate result of committing or attempting to commit *an unlawful act*." (Emphasis added.)  That is not correct.

[4] R.C. 4731.22(B)(6) states:

> Except as provided in division (P) of this section, the [state medical] board, by an affirmative vote of not fewer than six members, shall, to the extent

{¶ 28} R.C. 2903.34(A)(2) states: "No person who owns, operates, or administers, or who is an agent or employee of, a care facility shall . . . [c]ommit gross neglect against a resident or patient of the facility."[5] R.C. 2903.33(C)(1) defines "[g]ross neglect" as "knowingly failing to provide a person with any treatment, care, goods, or service that is necessary to maintain the health or safety

permitted by law, limit, revoke, or suspend a license or certificate to practice or certificate to recommend, refuse to issue a license or certificate, refuse to renew a license or certificate, refuse to reinstate a license or certificate, or reprimand or place on probation the holder of a license or certificate for one or more of the following reasons . . . (6) A departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established[.]

[5] "Care facility" is defined in R.C. 2903.33(A) as:

(1) Any "home" as defined in section 3721.10 of the Revised Code;

(2) Any "residential facility" as defined in section 5123.19 of the Revised Code;

(3) Any institution or facility operated or provided by the department of mental health and addiction services or by the department of developmental disabilities pursuant to sections 5119.14 and 5123.03 of the Revised Code;

(4) Any "residential facility" as defined in section 5119.34 of the Revised Code;

(5) Any unit of any hospital, as defined in section 3701.01 of the Revised Code, that provides the same services as a nursing home, as defined in section 3721.01 of the Revised Code;

(6) Any institution, residence, or facility that provides, for a period of more than twenty-four hours, whether for a consideration or not, accommodations to one individual or two unrelated individuals who are dependent upon the services of others.

Accordingly, it is not clear whether R.C. 2903.34(A)(2) would apply to the treatment Diana received from C.W. at the Cleveland Clinic Independence Family Health Center.

of the person when the failure results in physical harm or serious physical harm to the person."

{¶ 29} R.C. 2903.34(D) states that a violation of R.C. 2903.34(A)(2) is generally a first-degree misdemeanor. Only if an offender has previously been convicted of, or pleaded guilty to, a violation of R.C. 2903.34, is gross patient neglect a fifth-degree felony. R.C. 2903.34(D). There is, however, no allegation that C.W. had previously pleaded guilty to, or had otherwise been convicted of, a violation of R.C. 2903.34. Further, R.C. 2935.10 does not place a duty on prosecutors to investigate and prosecute misdemeanors charged by affidavit filed under R.C. 2935.09. *State ex rel. Evans*, 83 Ohio St.3d at 175.

{¶ 30} Woznak has not alleged facts in his amended petition that would support a finding that respondent acted unreasonably, arbitrarily, or unconscionably with respect to its investigation of, and decision not to prosecute C.W. for, the crimes alleged in Woznak's affidavit of criminal complaint. In this case, after presuming the truth of all the material factual allegations of Woznak's amended petition and drawing all reasonable inferences in his favor, it appears beyond doubt that Woznak cannot prevail on his mandamus claim. *See, e.g., State ex rel. Evans* at 174-175 (affirming court of appeals' judgment granting prosecutor's Civ.R. 12(B)(6) motion to dismiss on the grounds that "R.C. 2935.10 does not place any duty upon city prosecutors to prosecute misdemeanors charged by affidavit filed under R.C. 2935.09" and relator "did not allege sufficient facts in his complaint evidencing that the city prosecutor abused her discretion by determining that the

charges lacked probable cause"); *State ex rel. Bunting*, 2016-Ohio-5781, at ¶ 19-20 (affirming court of appeals' sua sponte dismissal of complaint in mandamus that was based on claim that prosecutor had not fulfilled his duty to investigate and prosecute where (1) "the investigation was not so lacking as to constitute an abuse of discretion" and (2) because prosecutor had the discretion to determine whether he could prove the alleged offense beyond a reasonable doubt with the evidence provided and R.C. 2935.09 does not mandate prosecution of all offenses charged by affidavit, prosecutor had no clear duty to prosecute).

{¶ 31} Accordingly, we grant respondent's motion to dismiss Woznak's amended petition for a writ of mandamus. Costs assessed against relator. The clerk is directed to serve on all parties notice of this judgment and its date of entry upon the journal. Civ.R. 58(B).

{¶ 32} Petition dismissed.

_____
EMANUELLA D. GROVES, JUDGE

LISA B. FORBES, P.J., and
MICHAEL JOHN RYAN, J., CONCUR