By the Court.
 

 This is an original action in this court. The relator seeks a peremptory writ of mandamus requiring the defendant, as attorney general of the state, to issue his voucher in favor of the relator for the sum of $1,500, which he asserts is the fair and reasonable value of services rendered by him as special counsel for the director of public welfare of the state, upon the designation and appointment of the attorney general.
 

 The issue is made, and the questions for consideration are presented, by motion of the attorney general for judgment on the pleadings. Our determination of the case must therefore be based upon the admitted facts, which are substantially as follows: Some time prior to June 23, 1923, the director of the department of public welfare, John E. Harper, consulted with the attorney general relative to an order theretofore issued by the director removing Mrs. Mae E. Stannard from her position as Chief Matron of the Girls’ Industrial School of the state. The attorney general, after
 
 *624
 
 examining the evidence, declined to represent the director in snch proceeding, and refused to permit any one connected with his department to do so, but later indicated that he would designate as special counsel any lawyer the director might select to represent him in the proceeding. On June 23 the director addressed a letter to the attorney general, in which he stated:
 

 “In accordance with your agreement, as submitted to me in your letter of June 22d, viz., that you will designate as special counsel any lawyer I may name to represent the department of public welfare in the Mae E. Stannard case, I hereby name and request that you designate: Randolph W. Walton.”
 

 To which letter on the same day the attorney general replied in writing, in part, as follows:
 

 “I am this day designating Mr. Walton to represent you in this particular case, but with the understanding that my department is in no way responsible for the conduct of the case, and the appointment is merely made for the purpose of giving Mr. Walton the right to appear in your behalf.”
 

 Thereafter, on June 29, the attorney general addressed to the director of public welfare the following letter:
 

 “Although in my letter to you designating Mr. Randolph Walton as your counsel, at your personal request, I tried to set out my position very fully, and in order that there may be no misunderstanding, I assume that you do not look to my department to take care' of attorney fees in this
 
 *625
 
 case. I should like to avoid any misunderstanding, and I am therefore calling this matter to your attention that Mr. Walton may know the situation. ’ ’
 

 The relator on June 23, 1923, entered upon the performance of his duties as counsel for the director of public welfare in such proceeding. Said Mae E. ¡Stannard was removed from her position, and thereafter perfected an appeal from the order of removal to the civil service commission, and the same was assigned for hearing on the 2d day of July, 1923. The hearing commenced on that day, and with some intermissions covered a period of nine days. The relator attended the same and conducted the examination of witnesses, and presented the case to the civil service commission. The director of welfare approved the bill presented by the relator, for his services, but the attorney general refused to approve the same or issue his voucher for any sum whatever.
 

 By Section 333, General Code, it is provided that the attorney general shall be the chief law officer for the state and all its departments, and that no state officer, board, or head of a department shall employ or be represented by other counsel or attorneys at law.
 

 By Section 336, General Code, it is provided that, if in his opinion the interests of the state require it, the attorney general may appoint special counsel to represent the state in civil actions or criminal prosecutions or other proceedings in which the state is a party or directly interested, and that such special counsel shall be paid for
 
 *626
 
 their services from funds appropriated by the G-eneral Assembly for that purpose.
 

 It therefore clearly appears that the head of the welfare department was without authority to procure counsel, at state expense, to represent him in such proceeding, and it is also clear that authority is reposed in the attorney general to appoint special counsel for such purpose if in his opinion the interests of the state require it. Undoubtedly his duties as chief law officer of the state do not require the attorney general to follow the direction of the head of a department with reference to instituting litigation or instituting or defending other proceedings. He is the legal adviser of the state and its departments, and his own opinion as to the merits of the controversy may determine what action, if any, his department should take relative thereto. This is claimed now to have been the attitude of the attorney general, and that claim has some support in the record, and yet the communications to which we have referred control the disposition of this case.
 

 The relator entered upon the discharge of his duties as special counsel in that proceeding under designation of the attorney general. So far as the record discloses he was not then informed directly or indirectly that he would not be compensated for his services by the state. The attorney general must have so interpreted his communication of June 23, for on June 29 the communication was sent to the director in which, for the first time, the matter of attorney fees was expressly mentioned, and in it he stated, “I assume that you do
 
 *627
 
 not look to my department to take care of attorney fees in this case,” and, further, “I am therefore calling this matter to your attention that Mr. Walton may know the situation.”
 

 The attorney general has ample authority under the law to appoint special counsel indefinitely, or for a limited time, or for a particular purpose, or a designated proceeding, and with any restrictions or limitations which he may see fit to impose as to the manner of service or compensation to he paid. It follows that he may dismiss or discontinue the service of any such special appointees.
 

 The relator must necessarily have considered the communication of June 29 as one intended by the attorney general to be a dismissal of the relator from such service, unless he chose to continue upon the terms therein prescribed by the attorney general. That, however, was six days after he had been designated special counsel for such service. On the day of his appointment he entered upon the performance of his duties, and presumably much of the preparation for the hearing before the civil service commission had been made prior to the receipt of the letter dated June 29, for the hearing opened Tuesday morning, July 2. For the service so rendered, at least, he would be entitled to be paid its fair and reasonable value by virtue of the provisions of Section 336, General Code. It is conceded, as it must be, that the fees to be allowed for such services are within the sound discretion of the attorney general, and a writ of mandamus can only require him to act relative thereto, and cannot control his discretion in that regard.
 

 For the reasons stated, we reach the conclusion
 
 *628
 
 that the motion of the attorney general for judgment on the pleadings should be overruled, and the •writ allowed.
 

 Writ allowed.
 

 Marshall, C. J., Robinson, Jones, Matthias, Day and Allen, JJ., concur.
 

 Wanamaker, J., not participating.