[This opinion has been published in *Ohio Official Reports* at 71 Ohio St.3d 245.]

THE STATE EX REL. THOMAS *v*. OHIO STATE UNIVERSITY.

[Cite as *State ex rel. Thomas v. Ohio State Univ.*, 1994-Ohio-261.]

*Mandamus to compel release of names and work addresses of animal research scientists in documents already provided, but which had that information redacted, granted, when.*

(No. 94-1074—Submitted November 29, 1994—Decided December 20, 1994.)

IN MANDAMUS.

_____

{¶ 1} By letter dated May 2, 1994, relator, Shawn A. Thomas, an attorney, requested from respondents, The Ohio State University ("OSU") and its Vice President for Research, Professor Edward F. Hayes, certain information under the state Public Records Act, R.C. 149.43. Thomas broadly requested information, including:

"1. All records *** held or recorded by The Ohio State University and created between September 23, 1991 and May 2, 1994 *** regarding or related to POET (Protect Our Earths Treasures), Students For Animals, SPARE (Save Pets from Abuse Research and Euthanasia), Mr. Robin Russell, Ms. Ritchie Laymon, Ms. Amy Achor, Mr. Shawn A. Thomas and/or any other pro-animal or humane action group or individual.

"2. All records *** created by or received by Edward F. Hayes, any researcher or principal investigator at The Ohio State University, Herb Asher, Bill Yonushonis, Steve McDonald, Earle Holland, Rich Tallman and/or any or all 'Research Deans' at The Ohio State University between September 23, 1991 and May 2, 1994 *** regarding public records requests, policies, strategies, handling or responding to public records requests."

**{¶ 2}** Thomas further requested that the records be "ready for pick up at noon on May 9, 1994," and stated that he was prepared to pay for all actual duplication fees up to an initial amount of fifty dollars.

**{¶ 3}** On May 17, 1994, respondent, Steven J. McDonald, an Associate Legal Counsel with OSU's Office of Legal Affairs, on behalf of OSU and Professor Hayes, responded to Thomas' written request. Respondents claimed that parts of Thomas' written request "were framed as broad discovery requests, not as requests for specific public records, and are extremely vague, ambiguous, overbroad and burdensome" and therefore, they were "unable to respond" to those portions of the request.

**{¶ 4}** However, McDonald reviewed the files of each of the OSU employees named in Thomas' request "for documents from the specified time periods that directly concern (a) the groups and individuals named in [Thomas'] letter, (b) any public records requests that those groups and individuals have made, (c) Dr. Hayes' March 31, 1994 and April 13, 1994 memos, and (d) the May 11, 1994 meeting with principal investigators." McDonald stated that he had located and copied ninety-two pages of the foregoing documents which would be available at his office upon payment of a twenty-three dollar copying charge. Respondents withheld (1) documents created by or already in the possession of Thomas or the groups named in the request, (2) documents prepared by McDonald or at his request as legal counsel, and (3) information disclosing the names, addresses, and telephone numbers of individual researchers or investigators working on specific projects. Thomas picked up copies of documents not withheld by respondents.

**{¶ 5}** Thomas is seeking a writ of mandamus to compel respondents to comply with R.C. 149.43 by making available to him unredacted copies of all requested records. We issued an  entry denying Thomas' request for a writ of mandamus to the extent that his request broadly sought respondents to search for records containing selected information. *State ex rel. Fant v. Tober* (Apr. 28, 1993),

Cuyahoga App. No. 63737, unreported, affirmed in *State ex rel. Fant v. Tober* (1993), 68 Ohio St.3d 117, 623 N.E.2d 1202. We granted a limited alternative writ and set a schedule for the filing of records, briefs, and evidence.

{¶ 6} The cause is now before this court following an *in camera* inspection of the records.

_____

*Shawn A. Thomas*, *pro se*.

*Porter, Wright, Morris & Arthur* and *Kathleen M. Trafford*, for respondents.

_____

**Per Curiam.**

{¶ 7} Mandamus is the appropriate remedy to compel compliance with Ohio's Public Records Act, R.C. 149.43. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 426, 639 N.E.2d 83, 88-89. R.C. 149.43 generally is construed liberally in favor of broad access, and any doubt must be resolved in favor of disclosure of public records. *State ex rel. Warren Newspapers, Inc. v. Hutson* (1994), 70 Ohio St.3d 619, 621, 640 N.E.2d 174, 177.

{¶ 8} Respondents contend that the names and other information disclosing the identity of the animal research scientists do not constitute records for purposes of the Public Records Act. A "public record" is "any record that is kept by any public office ***." R.C. 149.43(A)(1). R.C. 149.011(G) broadly defines "records" to include "any *** device, or item *** received by *** any public office of the state *** which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." *State ex rel. Fant v. Enright* (1993), 66 Ohio St.3d 186, 188, 610 N.E.2d 997, 999.

{¶ 9} Although respondents have withheld information concerning the names, work departments, addresses, and telephone numbers of the scientists, Thomas now contends that he only wants the "names and *work* addresses" of these public employees. Therefore, our analysis is limited only to the foregoing

information. See, *e.g.*, *State ex rel. James v. Ohio State Univ.* (1994), 70 Ohio St.3d 168, 637 N.E.2d 911 (tenure evaluators' names); *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.* (1992), 65 Ohio St.3d 258, 602 N.E.2d 1159 (names of donors); *State ex rel. Dispatch Printing Co. v. Wells* (1985), 18 Ohio St.3d 382, 18 OBR 437, 481 N.E.2d 632 (names and addresses of municipal civil service members); *Police & Fire Retirees of Ohio, Inc. v. Police & Firemen's Disability & Pension Fund* (1985), 18 Ohio St.3d 231, 18 OBR 289, 480 N.E.2d 482, (names and addresses of members of disability and pension fund). The names and work addresses of the animal research scientists serve to document the organization, functions, and operations of OSU's animal research activities. See *State ex rel. Beacon Journal Publishing Co. v. Akron* (1994), 70 Ohio St.3d 605, 606, 640 N.E.2d 164, 166 (Social Security numbers of city employees constitute "records" for purposes of Public Records Act). Therefore, the names and work addresses of the individual scientists were properly redacted from the provided records pursuant to R.C. 149.43(A)(1). Exceptions to disclosure are strictly construed against the custodian of the public records, and the burden to establish an exception is on the custodian. *James*, 70 Ohio St.3d at 169, 637 N.E.2d at 912. R.C. 149.43(A)(1) excepts from disclosure "records the release of which is prohibited by state or federal law." Respondents generally assert that redaction of names and other identifying information is proper when it is reasonably believed to be necessary to protect the personal privacy and safety of the individual scientists and when the redaction does not unduly inhibit the public's right to know the organization's functions, policies, decisions, procedures, operations or other activities of the public university. More particularly, respondents assert that the "identity of individuals engaged in specific scientific research projects using animals must be found to be constitutionally protected from public disclosure."

{¶ 10} Respondents appear to advocate a balancing test similar to that adopted in the Freedom of Information Act ("FOIA"), the federal counterpart to

R.C. 149.43. For example, Section 552(b)(6), Title 5, U.S. Code allows federal agencies to withhold information contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Pursuant to this FOIA exemption, the court must balance the privacy interest of the individual against the public interest in disclosure. *Dept. of the Air Force v. Rose* (1976), 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11, 27. Respondents cite *Lesar v. United States Dept. of Justice* (C.A.D.C.1980), 636 F.2d 472, which relied on a similar FOIA exemption regarding investigatory records compiled for law enforcement purposes. See Section 552(b)(7)(C), Title 5, U.S. Code. However, as respondents concede, FOIA does not apply here, and R.C. 149.43 contains no similar personal-privacy exception.

{¶ 11} In *State ex rel. Toledo Blade Co.*, 65 Ohio St.3d at 266, 602 N.E.2d at 1164-1165, this court rejected contentions by the University of Toledo Foundation that federal and state common-law privacy rights prohibit disclosure of donor names by holding:

"It is the role of the General Assembly to balance the competing concerns of the public's right to know and individual citizens' right to keep private certain information that becomes part of the records of public offices. The General Assembly has done so, as shown by numerous statutory exceptions to R.C. 149.43(B), found both in the statute itself and in other parts of the Revised Code."

{¶ 12} The right to privacy has several constitutional meanings, including the Fourth Amendment's restriction on government searches and seizures and the due process and equal protection right to engage in highly personal activities; more specifically, it relates in a due process and equal protection context to certain rights of freedom of choice in marital, sexual, and reproductive matters. 3 Rotunda & Nowak, Treatise on Constitutional Law (2 Ed.1992) 298, Section 18.26. Names and work addresses do not appear to implicate the constitutional right of privacy.

**{¶ 13}** However, in *State ex rel. Beacon Journal Publishing Co.*, *supra*, the court recently determined that federal constitutional privacy rights forbid disclosure of Social Security numbers ("SSNs") under R.C. 149.43 in the particular circumstances involved. Although this court engaged in weighing interests benefited by disclosure against privacy interests, we emphasized that "[d]ue to the federal legislative scheme involving the use of SSNs, city employees have a legitimate expectation of privacy in their SSNs." *Id.* at 609, 640 N.E.2d at 167. There is no similar legislative scheme protecting the names and work addresses of public employees in general or animal research scientists in particular. Additionally, although there is evidence of an increase in reported incidents of threats, harassment, and violence against animal research scientists, there does not appear to be the same "high potential for *** victimization" found by the court to be apparent from the disclosure of SSNs. *Id.* at 612, 640 N.E.2d at 169. Therefore, respondents' assertion that the constitutional right to privacy excepts names and work addresses from disclosure under R.C. 149.43 is without merit.

**{¶ 14}** Respondents further claim that the disclosure of the names and work addresses of animal research scientists would have a chilling effect on their constitutional right to academic freedom. Respondents contend that "[i]ndividual faculty members understandably may be reluctant to continue significant, medically important research, if by doing so they may jeopardize their own privacy, security and physical safety and that of their families and neighbors." *Id.* We rejected a similar contention by OSU in seeking to withhold tenure evaluators' names in *James*, finding the claimed injury to academic freedom of not receiving candid information in the tenure process to be "'remote and attenuated.'" *James*, 70 Ohio St.3d at 171, 637 N.E.2d at 913, citing *Univ. of Pennsylvania v. Equal Emp. Opportunity Comm.* (1990), 493 U.S. 182, 200, 110 S.Ct. 577, 588, 107 L.Ed.2d 571, 589. We further noted:

"Even if we were convinced that the integrity of the promotion and tenure process would be diminished by the disclosure of the documents at issue, this is a public policy consideration which it is not our place to evaluate. As we have recognized in *State ex rel. Multimedia v. Whalen* (1990), 48 Ohio St.3d 41, 549 N.E.2d 167, in enumerating very narrow, specific exceptions to the public records statute, the General Assembly has already weighed and balanced the competing public policy considerations between the public's right to know how its state agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure." *James*, 70 Ohio St.3d at 172, 637 N.E.2d at 913-914.

{¶ 15} Therefore, while there is a concern that criminal conduct might result from the release of names and work addresses of animal research scientists under R.C. 149.43, the "answer is that criminal conduct should be punished by criminal sanctions" or that the General Assembly should consider a personal privacy exemption similar to those in FOIA, rather than resolving the matter through judicial expansion of the constitutional rights to privacy and academic freedom to forbid their disclosure. Cf. *State ex rel. Beacon Journal Publishing Co.*, 70 Ohio St.3d at 618, 640 N.E.2d at 173 (Douglas, J., Dissenting). Thomas is entitled to the names and work addresses of the individual scientists which respondents had improperly redacted from the records provided to him.

{¶ 16} Respondents contend that they properly withheld other records from Thomas based upon attorney-client privilege. The attorney-client privilege is based on the premise that confidences shared in the attorney-client relationship are to remain confidential. *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 660, 635 N.E.2d 331, 349. Records of communications between attorneys and their state-government clients pertaining to the attorneys' legal advice are excepted from disclosure under R.C. 149.43(A)(1) since the release of these records is prohibited by state law. See *Woodman v. Lakewood* (1988), 44 Ohio App.3d 118, 541 N.E.2d 1084; *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1992), 82 Ohio App.3d

202, 611 N.E.2d 838; see, also, *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1991), 57 Ohio St.3d 77, 81, 566 N.E.2d 146, 150 (on remand, court of appeals ordered to consider claimed attorney-client privilege excepting records from release under R.C. 149.43).

**{¶ 17}** The records withheld by respondents based on the attorney-client privilege included documents which consisted of communications between McDonald, an attorney employed by OSU's Office of Legal Affairs, and certain OSU employees pertaining to public-records requests made by Thomas and POET. Thomas claims that the attorney-client privilege does not apply since McDonald was never appointed as an Assistant Attorney General. R.C. 3345.15 provides:

"The Attorney General shall be the attorney for each state college and university and shall provide legal advice in all matters relating to its powers and duties."

**{¶ 18}** Under R.C. 109.05, the Attorney General "may appoint such employees as are necessary." In October 1991, OSU and Attorney General Lee Fisher entered into a "Memorandum of Understanding" regarding the provision of legal services to OSU. Section III(B) of the agreement allows OSU to employ attorneys to carry out university business with the condition that "the Attorney General must approve such appointments and the Attorney General shall appoint such attorneys as Assistant Attorneys General, with appropriate limitations or conditions of appointment as may be deemed necessary by either the Attorney General or the General Counsel." According to an affidavit of Christopher M. Culley, Assistant Attorney General, Chief, Education Section, McDonald was approved as an Assistant Attorney General through an interview process and had been in this position since his employment at OSU, with authorization to practice law on behalf of OSU. *Id.*

**{¶ 19}** Thomas claims that absent evidence of a letter of appointment by the Attorney General, respondents cannot meet their burden to establish the existence

8

of an attorney-client privilege as to the records of communications concerning McDonald's legal advice on the public records requests of Thomas and POET. Thomas cites *State ex rel. Walton v. Crabbe* (1924), 109 Ohio St.623, 143 N.E. 189, *State ex rel. Renner v. Guilbert* (1898), 58 Ohio St. 637, 51 N.E. 117 and *Columbian Building & Loan Co. v. Evatt* (B.T.A.1940), 18 O.O. 33, 6 Ohio Supp. 116, in support of his contention that a letter of appointment from the Attorney General is necessary to establish authority on the part of a university attorney to represent the university. However, none of the foregoing cases hold that an appointment by the Attorney General can only be established by evidence of a letter of appointment. In the instant case, Culley's affidavit provides sufficient evidence that McDonald was properly appointed as an Assistant Attorney General.

{¶ 20} Thomas alternatively contends, without citation of authority, that the attorney[-]client privilege "does not extend beyond [Thomas'] actual communications to include second or third generation recitations of the gist of his advice." (Relator's Brief, P. 21) However, the attorney-client privilege applies to documents containing communications between members of the public entity represented about the legal advice given. See *State ex rel. Natl. Broadcasting Co.*, 82 Ohio App.3d at 207, 611 N.E.2d at 841. Thus, respondents properly withheld these documents based on attorney-client privilege.

{¶ 21} Finally, Thomas claims that he is entitled to an attorney-fees award. R.C. 149.43(C) allows for an award of reasonable attorney fees to the person that instituted the mandamus action. Although federal courts are split as to the issue of a *pro se* litigant's entitlement to an award of attorney fees under FOIA, see, generally, Annotation, Pro Se Litigant as Entitled to Award of Attorneys' Fees for Value of His Own Services Rendered in Lawsuit Under Freedom of Information Act (5 USCS { 552) (1982), 56 A.L.R. Fed 573, this court has consistently held that *pro se* litigants are not entitled to attorney fees under R.C. 149.43. *State ex rel. Fant v. Mengel* (1991), 62 Ohio St.3d 197, 580 N.E.2d 1085; *Fant v. Bd. of*

*Trustees, Regional Transit Auth.* (1990), 50 Ohio St.3d 72, 552 N.E.2d 639. Thus, Thomas' request for attorney fees is denied.

{¶ 22} Accordingly, based on the foregoing, Thomas is granted a writ of mandamus to compel the release of names and work addresses of the animal research scientists in the documents already provided to him by respondents which had redacted that information. In all other respects, the writ is denied.

*Writ granted in part*

*and denied in part.*

————————————

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

————————————