**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Shaughnessy v. Cleveland,* **Slip Opinion No. 2016-Ohio-8447.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8447

THE STATE EX REL. SHAUGHNESSY *v.* THE CITY OF CLEVELAND ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Shaughnessy v. Cleveland,* Slip Opinion No. 2016-Ohio-8447.]**

*Mandamus—Public Records Act—R.C. 149.43—Relator did not show that Cleveland had a clear legal duty to respond to his public-records requests within eight business days—Writ denied—Statutory damages denied.*

(No. 2015-0360—Submitted August 30, 2016—Decided December 29, 2016.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} Relator, Matthew Shaughnessy, filed this original action in mandamus alleging that respondents, the city of Cleveland and its public-records administrator, Kim Roberson (collectively, "Cleveland"), violated R.C. 149.43, Ohio's Public Records Act, by failing to produce within eight business days the police incident reports that Shaughnessy requested.  We deny Shaughnessy's

request for relief and conclude that he has not shown that Cleveland had a clear legal duty to produce, or that he had a clear legal right to receive, the records he requested within eight business days. We also deny Shaughnessy's request for statutory damages.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} Shaughnessy is an attorney whose practice focuses on recovering economic losses for crime victims through the Ohio Crime Victims Fund. He requests and reviews police incident reports and then sends information about the fund to individuals named in those reports who may be victims of crime.

{¶ 3} Shaughnessy alleges that on five different occasions, Cleveland failed to produce copies of police incident reports in a reasonable amount of time, which he quantifies as eight business days. Cleveland produced copies of the requested records 12 to 31 business days after receipt of the initial requests. Shaughnessy submitted evidence showing that the cities of Akron, Canton, and Columbus have fulfilled his requests for police incident reports within four business days.

{¶ 4} Shaughnessy typically requested police incident reports involving felonious assaults or other assaults causing serious harm but excluding those involving domestic violence, elder abuse or assault upon a minor. Cleveland's evidentiary submission explained the steps involved in fulfilling his requests. Cleveland first had to search its database for reports that involved incidents of assaults or aggravated assaults and then exclude records involving the types of victims and offenses that Shaughnessy did not want. Then, to retrieve the actual reports, the records custodian typed each police-report number into Cleveland's database to extract and print each individual report. Cleveland submitted each report to its law department for review and redaction of information that the law department deemed exempt from disclosure under the Public Records Act. The information typically redacted from reports included Social Security numbers,

criminal information obtained from the National Crime Information Center and the Ohio Bureau of Criminal Investigation, the names of juveniles, medical information, and information describing the details of sexual offenses.

{¶ 5} Shaughnessy also submitted supplemental evidence purporting to show that on three different occasions after he initiated this action, Cleveland was able to provide copies of responsive police incident reports within two to four business days after Cleveland printed each report.

{¶ 6} Shaughnessy argues that Cleveland failed to respond to his requests in a reasonable amount of time and asks this court to order Cleveland to respond to future requests within eight business days, invoking our ruling in *State ex rel. Wadd v. Cleveland*, 81 Ohio St.3d 50, 689 N.E.2d 25 (1998). He also requests $1,000 in statutory damages, the maximum amount authorized in R.C. 149.43(C)(2), for each count of his five-count complaint.

## ANALYSIS

### Mootness

{¶ 7} As an initial matter, we consider Cleveland's argument that the case is moot because it has produced all the records at issue in the complaint. This argument is misplaced: Shaughnessy challenges the timeliness of Cleveland's response, not a refusal to provide records. This case therefore does not fall within the general rule that the production of requested records moots a public-records case. *See State ex rel. Consumer News Servs., Inc. v. Worthington City Bd. of Edn.*, 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82, ¶ 31, citing *Wadd*, 81 Ohio St.3d at 52, 689 N.E.2d 25. We reject Cleveland's mootness argument and proceed to the merits.

### Timeliness of Cleveland's Responses

{¶ 8} The Public Records Act states that all public records responsive to a request "shall be promptly prepared and made available for inspection," R.C. 149.43(B)(1), and that "a public office or person responsible for public records

shall transmit a copy of a public record to any person by United States mail or by any other means of delivery or transmission within a reasonable period of time after receiving the request for the copy," R.C. 149.43(B)(7). The determination whether a public office has complied with its duty to timely provide requested records depends on "all of the pertinent facts and circumstances." *State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 10, citing *Consumer News Servs.* at ¶ 37-38. As we detail below, Shaughnessy made frequent requests and those requests required Cleveland to search for records containing specific retrieval criteria, to cull out certain records that he did not want, and then to redact protected information. When we consider Shaughnessy's requests in the context of these circumstances, we conclude that Cleveland's responses were timely with respect to the requests identified in each count of the complaint, and we deny Shaughnessy's request for relief.

*Count One*

{¶ 9} Count one concerns Shaughnessy's October 10, 2014, faxed request for police reports within a two-week period "from the first and second districts for all non domestic violence related aggravated assaults or assaults where the victims sought medical care at a hospital."

{¶ 10} This was an improper public-records request, because it required Cleveland to do research for Shaughnessy and to identify a specific subset of records containing selected information. Cleveland had to search its database for reports that involved (1) incidents of "aggravated assaults" or "assaults," (2) occurring within a specific geographical location, (3) with victims who sought medical care at a hospital, but (4) who were not victims of domestic violence. The Public Records Act does not compel a public office "to do research or to identify records containing selected information." *See State ex rel. Fant v. Tober*, 8th Dist. Cuyahoga No. 63737, 1993 WL 173743, *1 (Apr. 28, 1993), *aff'd*, 68 Ohio St.3d 117, 623 N.E.2d 1202 (1993). *See also Morgan*, 121 Ohio St.3d 600,

2009-Ohio-1901, 906 N.E.2d 1105, at ¶ 14-15 (request for "[a]ny and all e-mail communications * * * which reference * * * the 'evidence-based model' or education funding in general" was overbroad) (first ellipsis sic); *State ex rel. Thomas v. Ohio State Univ*., 71 Ohio St.3d 245, 246, 643 N.E.2d 126 (1994) (noting denial of writ of mandamus where request for records sought selected information "regarding or related to" any pro-animal-rights action group or individual), citing *Fant*.

{¶ 11} For this reason, Cleveland could have denied Shaughnessy's request outright and asked him to revise it. *See* R.C. 149.43(B)(2). Instead, Cleveland searched its database for incident reports that referred to assaults or aggravated assaults and generated a list of police-report numbers. Cleveland produced that list the same day of Shaughnessy's request. But Cleveland's work did not end there. In order to retrieve the actual reports, the records custodian had to type each police-report number into Cleveland's records-management system to extract and print out each individual report. Cleveland then submitted each report to the law department for review and redaction. After taking these steps, Cleveland produced copies of the incident reports on November 17, 2014, or 24 business days after Shaughnessy's request.

{¶ 12} R.C. 149.43(A)(1) excludes certain information from the definition of a public record, some of which is prohibited from public release by law. Public offices therefore often find it necessary to conduct a legal review of responsive records and to redact non-public-record information. This court has recognized that the Public Records Act envisions an opportunity for the public office to examine records prior to release in order to redact exempt materials appropriately. *Morgan*, 121 Ohio St.3d 600, 2009-Ohio-1901, 901 N.E.2d 1105, at ¶ 16, citing *State ex rel. Warren Newspapers, Inc. v. Hutson*, 70 Ohio St.3d 619, 623, 640 N.E.2d 174 (1994). And we have stated that police incident reports are subject to redactions to prevent the disclosure of exempt information. *See State ex rel.*

*Beacon Journal Publishing Co. v. Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 55-56 (police incident reports may be redacted to eliminate personal victim information).  It was therefore reasonable for Cleveland to delay disclosure a bit longer to conduct a legal review.  Our analysis of the timeliness of Cleveland's response must take into account the practical and legal restrictions that Cleveland faces.

**{¶ 13}** Shaughnessy's supplemental evidence purports to show that Cleveland was able to complete its legal review and produce responsive records within two to four business days after Cleveland printed each incident report.  But the possibility that Cleveland may be able to complete its legal review within a shorter time frame does not transform Shaughnessy's improper requests into proper ones.  *See State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 38 (past disclosure of information does not transform a nonrecord into a record under the Public Records Act).

**{¶ 14}** Shaughnessy bases his argument that Cleveland had a legal duty to respond to his public-records requests within eight business days on *Wadd*, 81 Ohio St.3d 50, 689 N.E.2d 25, in which we concluded that Cleveland must provide access to accident reports within eight days after the accidents occur.  *Id*. at 55.  However, *Wadd* is inapposite.  The relator in *Wadd* requested access to reports for motor-vehicle accidents occurring on one specific day.  *Id*. at 51. Here, by contrast, Shaughnessy requested copies of reports for incidents spanning a two-week period, and he made several subsequent, similar requests, which generally resulted in 100 to 300 pages of responsive reports.  In addition, *Wadd* involved the *availability* of accident reports for in-person inspection and copying by the requestor.  *Id.* at 50-51.  Here, the issue is not the records' availability for inspection; rather, a public office had to locate, retrieve, copy, redact, and transmit copies of the responsive records.  *Wadd* does not provide a comparable basis to impose an eight-business-day deadline on Cleveland in this case.

{¶ 15} Nor does Shaughnessy's comparison of Cleveland's response times to response times in other cities, without more context, justify imposing an eight-business-day deadline on Cleveland. Shaughnessy offers no evidence as to the manner in which those cities keep, organize or retrieve incident reports or whether those cities conducted legal review and redaction.

{¶ 16} To be sure, Cleveland could have done things differently. In conformity with the Public Records Act, Cleveland's public-records policy states that if a request is overbroad, the city may deny the request but must inform the requestor about the manner in which the city keeps and accesses its records so that the requestor can revise the request. *Accord* R.C. 149.43(B)(2). If it cannot immediately fulfill a request, Cleveland's policy requires it to estimate the time necessary to do so. Cleveland's failure to comply with its own policy does not in itself compel relief in mandamus, however. In *Morgan*, although the governor's office failed to provide the requestor with an estimated response time in accordance with its policy, we determined that the office otherwise acted reasonably given the broad scope of the request and the office's decision to review records before production. *See Morgan*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, at ¶ 12-17.

{¶ 17} Similarly, here, Cleveland's response time of 24 business days was reasonable given the steps Cleveland took to search for responsive records by subject matter, exclude the records that Shaughnessy did not want, retrieve and print each individual police incident report, and then review and redact exempt information. In the context of these circumstances, Cleveland's response to the request at issue in count one was timely.

*Count Two*

{¶ 18} Count two concerns Shaughnessy's November 13, 2014, hand-delivered request for nine specific police incident reports listed by date, address, and offense. Cleveland produced responsive records 25 business days after

Shaughnessy's request. Unlike the request involved in count one, this request did not require a subject-matter search. As explained above, however, it is not the initial search but Cleveland's subsequent retrieval and review of each document that requires more than a few days. Cleveland was also simultaneously responding to Shaughnessy's October 10, 2014 request, which it completed on November 17, 2014. Given these circumstances, Cleveland's response was timely.

*Count Three*

{¶ 19} Count three concerns Shaughnessy's January 26, 2015, certified-mail request for every police incident report from January 8 through January 14, 2015, involving felonious assault or assaults causing serious harm, but excluding domestic violence, elder abuse by a caregiver or assault upon a minor. Cleveland received Shaughnessy's request on January 29, 2015, and on that same day produced a list of 19 responsive reports. Cleveland produced 68 pages of responsive records on February 17, 2015, or 12 business days after receipt of Shaughnessy's request.

{¶ 20} Once again, Shaughnessy's request was improper, because it asked Cleveland to search for records containing select information and excluding other information. Shaughnessy requested reports that referred to felonious assaults or assaults causing serious harm and then asked Cleveland to cull out the reports that involved domestic violence, elder abuse by a caregiver or assault upon a minor. As in count one, Cleveland could have denied Shaughnessy's request and asked him to revise it. But once again, Cleveland obliged him by searching for responsive records by subject matter, retrieving the search results by police-report number, excluding the records that he specified, and then reviewing and redacting exempt information before producing the reports. Given all these steps, Cleveland's response was timely.

8

*Counts Four and Five*

{¶ 21} On February 2, 2015, Shaughnessy requested by certified mail copies of every police incident report made during a seven-day period involving felonious assault or assaults causing serious harm, but excluding domestic violence, elder abuse by a caregiver or assault upon a minor. On February 6, 2015, he sent an identical request for reports made during a different seven-day period. In response to the February 2 request, Cleveland produced 136 pages of records on March 24, 2015, or 31 business days after Cleveland's receipt of the request on February 6, 2015. In response to the February 6 request, Cleveland produced 141 pages of records on March 25, 2015, also 31 business days after receipt of the request on February 9, 2015.

{¶ 22} While 31 business days may appear to stretch the outer limits of reasonableness, we should note that, again, Shaughnessy's requests were improper because they asked Cleveland not only to retrieve records containing selected information but also to cull out the ones that he did not want. In addition, we have to examine Cleveland's response time in the context of the frequency and volume of Shaughnessy's requests. He submitted three requests in the span of two weeks. His requests on January 26, February 2, and February 6 combined resulted in 345 pages of responsive records. And each of these requests required the city to search for responsive records by subject matter, exclude the records Shaughnessy did not want, retrieve responsive records by police-report number, and then review the records for possible redactions. Under these circumstances, and considering that Shaughnessy's requests were improper from the outset, Cleveland's response time was reasonable.

## CONCLUSION

{¶ 23} We conclude that Shaughnessy has not shown that Cleveland had a clear legal duty to produce, or that he had a clear legal right to receive, the records

he requested within eight business days. We deny Shaughnessy's request for a writ of mandamus and deny his request for statutory damages.

Writ denied.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, FRENCH, and O'NEILL, JJ., concur.

KENNEDY, J., dissents, with an opinion.

_____

**Kennedy, J., dissenting.**

{¶ 24} When a public office does not reject a public-records request as being "ambiguous or overly broad" pursuant to R.C. 149.43(B)(2) or deny the request with explanation pursuant to R.C. 149.43(B)(3), the Public Records Act requires the public office to produce responsive records in a "reasonable period of time" given the pertinent facts and circumstances of the case. R.C. 149.43(B)(1); *accord State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 10. Because relator, Matthew Shaughnessy, complied with the city of Cleveland's request form, which asked for the "specific details about what" the requestor wanted, the public-records requests described in counts 1, 2, 3, 4, and 5 of the complaint were proper. Therefore, I dissent.

{¶ 25} Because the totality of the evidence demonstrates that Cleveland was capable of identifying, printing, reviewing and redacting, and producing responsive records within three to five business days, I would hold that the eight-business-day standard established in *State ex rel. Wadd v. Cleveland*, 81 Ohio St.3d 50, 689 N.E.2d 25 (1998) is reasonable. Therefore, I would grant the writ of mandamus as to counts 1, 2, 3, 4, and 5 of the complaint and order Cleveland to produce responsive records to future similar written public-records requests within eight business days. Moreover, I would grant Shaughnessy $2,000 in statutory damages pursuant to R.C. 149.43(C)(2).

**{¶ 26}** "In Ohio, public records are the people's records, and officials in whose custody they happen to be are merely trustees for the people; therefore, anyone may inspect these records at any reasonable time." *State ex rel. Warren Newspapers, Inc. v. Hutson*, 70 Ohio St.3d 619, 640 N.E.2d 174 (1994). To that end, we have construed the Public Records Act liberally in favor of disclosure of public records. *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, ¶ 6.

**{¶ 27}** To facilitate broad access to public records, the Public Records Act requires a public office to "organize and maintain public records in a manner that they can be made available for inspection or copying." R.C. 149.43(B)(2). However, it is " 'the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue.' " *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 29, quoting *State ex rel. Fant v. Tober*, 8th Dist. Cuyahoga No. 63737, 1993 WL 173743, *1 (Apr. 28, 1993), *aff'd*, 68 Ohio St.3d 117, 623 N.E.2d 1202 (1993).

**{¶ 28}** "If a requester makes an ambiguous or overly broad request," then the public office may deny the request. R.C. 149.43(B)(2). If a request is denied on this basis, then the public office must give the requestor "an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties." *Id*. If the public office "ultimately" denies the public-records request, the public office must "provide the requester with an explanation, including legal authority, setting forth why the request was denied." R.C. 149.43(B)(3).

**{¶ 29}** In denying the writ of mandamus, the majority concludes that Shaughnessy's requests in counts 1, 3, 4, and 5 of the complaint were improper

because they required Cleveland to research its database in order to identify selected information in a subset of records. I disagree.

{¶ 30} The evidence demonstrates that Shaughnessy made all of the public-records requests at issue on Cleveland's public-records-request form and specifically conformed his requests to the requirements of the form, which asked for, in addition to the requestor's name and contact information, the "specific details about what [the requestor wanted], including time frame, locations, etc. (if applicable)."

{¶ 31} In keeping with the generalized request form, Cleveland's Public Records Policy stated that the requestor "must clearly state the records and/or information being sought to allow the City of Cleveland to identify, retrieve and review records" and that "[i]f a request is vague and overbroad, the City may deny the request."

*Count 1*

{¶ 32} Shaughnessy sent the request described in Count 1 of the complaint on October 10, 2014. It stated:

> I am an attorney who advocates for crime victims. I would like to
> recieve [sic] copies of initial police reports from the first and
> second districts for all non domestic violence related aggravated
> assaults or assaults where the victims sought medical care at the
> hospital. Maybe you can help me with the best way to word this
> request to best meet my requirements as I would like to make
> requests for this information on a weekly basis and do not want to
> cause you unnecessary work. I would like copies of these reports
> for Sunday September 21, 2014 through Saturday October 5, 2014.

{¶ 33} Cleveland's law department stamped the request received on October 10, 2014. In response to the request, Cleveland did not indicate that Shaughnessy's request was "vague or overbroad." On the contrary, Nancy Diemer, a public-records assistant in Cleveland's law department, responded by e-mail on October 10, 2014, stating, "In response to your public record request above, we've attached is [sic] a list of all assaults in D1 and D2 for the time period requested. If you would like this on a weekly basis the information is available online at: http://clevelandgis.org/pub/index/html?config=crime.xml."

{¶ 34} After further clarification that Shaughnessy wanted a copy of the actual police incident reports, on November 17, 2014, Carol A. Harvanek, another public-records assistant in Cleveland's law department, sent Shaughnessy an e-mail that provided a link to the incident reports.

*Count 2*

{¶ 35} Shaughnessy's second request, dated November 13, 2014, requested the "initial * * * Police Report * * * created for the Following incidents" and thereafter listed nine incidents, setting forth the date, location, and type of offense for each one. The format of this request—the listing of the nine incidents by date, location, and offense type—was consistent with the information retrievable by the hyperlink that Diemer provided to Shaughnessy on October 10, 2014. Cleveland Gis Crime Calls, http://www.clevelandgis.org/pub/index.html?config=crime.xml (accessed December 14, 2016).

{¶ 36} The law department stamped the request received on November 13, 2014. In response, Cleveland did not indicate that Shaughnessy's request was "vague or overbroad." On December 19, 2014, Harvanek sent Shaughnessy an e-mail with an electronic file containing the responsive records and indicated that redactions had been made pursuant to law.

*Counts 3, 4, and 5*

{¶ 37} Shaughnessy's third request, dated January 26, 2015, was worded differently from the first two requests:

> Please provide 1 copy of each police incident report made by the Cleveland Police Department within the time frame of January 8, 2015, and January 14, 2015, with regard to the crimes of Felonious Assault (R.C. 2903.11) and Assaults causing serious harm (R.C. 2903.13)[.]
>
> For purposes of this request you may omit entirely, without explanation, any reports with regard to Domestic Violence; Elder Abuse by caregiver, or assault upon victims who are minors.
>
> This request is not made in preparation of any criminal defense whatsoever * * *.
>
> Please call if you need any clarification[.]

{¶ 38} The law department stamped the request received on January 29, 2015. Again, Cleveland did not reject Shaughnessy's request because the request was "vague or overbroad." Thereafter, a reported-crimes report was generated for the date range requested, setting forth the report numbers and locations for 19 incidents of aggravated assault. On February 17, 2015, Harvanek e-mailed Shaughnessy a link to the responsive documents.

{¶ 39} Shaughnessy's fourth and fifth requests followed the exact same format as his third request. The law department stamped the requests received on February 10, 2015, and February 9, 2015, respectively. Again, Cleveland did not reject Shaughnessy's requests because the requests were "vague or overbroad." On March 25 and 24, 2015, respectively, Harvanek e-mailed Shaughnessy links to the responsive documents for his fourth and fifth public-records requests.

*All of Shaughnessy's public-records requests were proper*

{¶ 40} I disagree with the majority's conclusion that the public-records requests detailed in counts 1, 3, 4, and 5 of Shaughnessy's complaint were "improper," because I conclude that Shaughnessy specifically complied with the instructions provided on Cleveland's public-records-request form. Cleveland has a standard, generalized form for public-records requests. The form asks requestors to provide specific information that would enable Cleveland to locate, retrieve, and review the records sought.

{¶ 41} The majority concludes that Cleveland could have done things differently—but it didn't. Cleveland's public-records form asked requestors to be specific about the facts of the report being requested and provided, as an example of the specific information needed, the "time frame" and location of the requested reports. Cleveland's public-records policy also required specificity by requiring a requestor to "clearly state the records and/or information being sought" in order to allow Cleveland the opportunity to "identify, retrieve and review the records." Cleveland did not reject Shaughnessy's public-records requests as being "ambiguous or overly broad" under R.C. 149.43(B)(2), ask Shaughnessy to revise his requests, or deny his request with explanation under R.C. 149.43(B)(3).

{¶ 42} In the majority's view, this specificity, which Cleveland required, made the request improper, because Shaughnessy was seeking information from a subset of records, which required a search of the records. However, as set forth above, Cleveland's form and policy specifically asked Shaughnessy for the specific details of the reports sought. By prompting a requestor to provide details, Cleveland recognized that every request will seek a subset of police reports, not all police reports. Moreover, as is demonstrated in this case, because of the way Cleveland chooses to organize and maintain its records, a search of the record database is always required in order to provide a subset of the records—whether that is one report, nine reports, or more. The supplemental affidavit of Kim

Roberson, a public-records administrator for Cleveland, and the supplemental exhibits demonstrate that Cleveland does retrieve police-incident-report numbers based on the type of offense, i.e., "felonious assault and assaults causing serious harm."

{¶ 43} Shaughnessy's public-records request described in count 1asked for police reports for a specific time period, for a specific location, and for specific crimes. Cleveland responded with a hyperlink that mapped out the responsive incidents. When he clarified that he wanted the actual reports and not just the information provided in the hyperlink, Cleveland followed up with a second e-mail directing him to a file with the incident reports he sought.

{¶ 44} The request also asked Cleveland to advise Shaughnessy if he was not wording his request properly and stated that he would make the request consistent with Cleveland's wishes. As set forth above, however, Cleveland's only response was the production of the responsive records.

{¶ 45} Shaughnessy's public-records request in count 2 followed the outline of the information provided in the hyperlink that Cleveland provided to Shaughnessy in its initial response to his first public-records request. The majority concludes that this request was proper because "this request did not require a subject-matter search." Majority opinion at ¶ 18. However, the majority misses the point that the information Shaughnessy provided was essentially the same information that he provided in the request in count 1. Shaughnessy still specified the records sought by date, location, and offense—which is what Cleveland's public-records form required. Moreover, regardless of which request Cleveland received—the request in count 1 of the complaint or the one in count 2—Cleveland still had to conduct a search of its records to produce a subset of the entire record. How Cleveland searched the database for the police-incident-report numbers to fulfill the records request in count 2 of the complaint is unknown and irrelevant.

**{¶ 46}** Moreover, the majority's conclusion that the request in count 2 was proper because it "did not require a subject-matter search," majority opinion at ¶ 18 does not comport with our past precedent, in which we have held that a request is only improper if it requires a government agency to "search through voluminous documents for those that contain certain information or to create a new document by searching for and compiling information from existing records." *State ex rel. Carr v. London Corr. Inst.*, 144 Ohio St.3d 211, 2015-Ohio-2363, 41 N.E.3d 1203, ¶ 22, citing *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 30-31, 35, and *State ex rel. Kerner v. State Teachers Retirement Bd.*, 82 Ohio St.3d 273, 274, 695 N.E.2d 256 (1998). Our precedent does not disallow requests for records that require subject-matter searches.

**{¶ 47}** By finding the request in count 2 proper, the majority admits that a request for a specific subset of incident reports is permissible. It appears then that the majority views the requirement of "a subject-matter search" as the crucial factor that determines whether or not a request is proper. The only difference between Shaughnessy's request in count 2 and the requests at issue in counts 1, 3, 4, and 5 is that the request in count 2 listed the nine incidents by a specific date, specific location, and offense type for each police incident report requested, while the other requests listed a date by range, location by district, and offense type for each police incident report requested.

**{¶ 48}** Shaughnessy's request described in count 3, while worded differently, still provided Cleveland with the same general information that the city's form requested and that Shaughnessy had provided in the requests set forth in counts 1 and 2 of the complaint. Shaughnessy's requests in counts 4 and 5 mirrored the request in count 3.

**{¶ 49}** The requests in counts 3, 4, and 5 of the complaint also gave Cleveland discretion not to provide reports involving domestic violence, elder

abuse by a caregiver, or assault of a juvenile. Importantly, Shaughnessy stated that Cleveland "may omit entirely" these categories. Use of the term "may" should be construed as permissive, not mandatory. *In re Application of Ormet Primary Aluminum Corp.*, 129 Ohio St.3d 9, 2011-Ohio-2377, 949 N.E.2d 991, ¶ 17. Therefore, it was within the discretion of Cleveland to cull out those records or not to cull out those records.

**{¶ 50}** In reaching the conclusion that *Wadd* is "inapposite," majority opinion at ¶ 14, the majority focuses on the fact that Wadd wanted a single day's worth of vehicle crash reports while Shaughnessy requested a series of reports. However, this conclusion is contrary to Cleveland's own admission that it has identified documents responsive to Shaughnessy's requests on the same day that his requests have been made. And it is contrary to the evidence that Cleveland produced nine police incident reports in 20 minutes when a request (which was not included in Shaughnessy's complaint) was made in person. It was only when Shaughnessy made a written request for nine police incident reports that Cleveland took 26 days to produce the responsive records.

**{¶ 51}** Moreover, the majority concludes that Shaughnessy's similar requests to other large metropolitan police departments cannot "justify" imposing the *Wadd* eight-business-day requirement on Cleveland "without more context" because Shaughnessy does not offer "evidence as to the manner in which those cities keep, organize or retrieve incident reports or whether those cities conduct legal review and redaction." Majority opinion at ¶ 15. While I agree that the record is silent as to how these other cities store police incident reports or whether they conduct legal review and redaction of responsive records, the most reasonable interpretation of this silence is not that these other police departments have ignored their obligations under the Public Records Act but that these cities have created efficient processes that ensure records are produced in a reasonable amount of time with protected information shielded from disclosure.

**{¶ 52}** Shaughnessy submitted evidence showing that the Cincinnati Police Department provided all police incident reports involving felonious assaults and assaults causing serious harm committed within a one-week time period within two days of Shaughnessy's request. Likewise, the Columbus Division of Police provided all police incident reports involving felonious assaults and assaults causing serious harm committed within a two-week period, for a total of 399 pages of records, within one day of Shaughnessy's request. The responsive-record production from Columbus is far larger than any of the responsive-record productions from Cleveland, which were 68 pages, 136 pages, 141 pages, and likely less than 50 pages, respectively. Yet it took Columbus one day and Cleveland anywhere from 12 to 31 days to respond to Shaughnessy's written public-records requests.

**{¶ 53}** The Canton Police Department provided all police incident reports involving felonious assaults committed within a 30-day period on the same day of the request, for a total of 30 responsive pages. The city of Akron posts police incident reports online within a few days of the incident, and as a result, Shaughnessy does not need to make individual public-records requests of Akron.

**{¶ 54}** Shaughnessy has demonstrated that Cleveland should be able to produce the requested records within three to five business days. Specifically, Cleveland admitted in its answer that it can identify responsive records on the same day they are requested. And Shaughnessy's supplemental affidavit and its exhibits show that the remaining steps have been completed in two to four business days. Exhibits I, J, and K show the dates on which the reports were printed and also the dates they were e-mailed to Shaughnessy. The time in between is presumably the time for review and redaction, which is two to four days. Therefore, Cleveland should be able to produce records within three to five business days.

{¶ 55} Moreover, while the majority concludes that Shaughnessy's requests in counts 1, 3, 4, and 5 were improper, it is noteworthy that Shaughnessy's requests to the other large metropolitan police departments mirrored his requests to Cleveland, with the exception that he sought all responsive police reports made throughout those cities, while his request to Cleveland was limited to districts one and two.

{¶ 56} Just as in *Wadd*, I believe the time other cities take to respond to similar requests and the way Cleveland responded to Shaughnessy's requests after the mandamus action was filed are pertinent facts that provide an illustrative standard for a "reasonable" time for responding to a public-records request. *See Wadd*, 81 Ohio St.3d at 53, 689 N.E.2d, 25. In light of all the pertinent facts, I believe that the eight-business-day standard of *Wadd* is applicable here.

{¶ 57} Additionally, the majority's reliance on *Fant*, 8th Dist. Cuyahoga No. 63737, 1993 WL 173743, is misplaced. As the *Fant* court recognized, the public-records requestor did not request a specific record. *Id.* at *1. Instead, he requested "information," specifically, the "names, payroll numbers, residential mailing addresses, and dates of employment" of certain bus operators. *Id.* Here, Shaughnessy requested police incident reports. Shaughnessy did not ask for information from the police incident reports. Cleveland did, however, ask Shaughnessy for specific information about his request (i.e. date and location) in order to fulfill that request.

{¶ 58} Seemingly, the majority places great emphasis on the procedural process that Cleveland undertakes to produce records responsive to Shaughnessy's requests. However, all public offices will engage in some rote process of locating, retrieving, and reviewing a public record prior to release to a requestor. The process that Cleveland has designed and implemented, which includes checks and balances to ensure that a records request does not slip

through the cracks, is not at issue. The length of time that Cleveland takes in completing that process when the request is made in writing is the issue.

{¶ 59} While the facts are distinguishable because of the length of the delay and the type of records sought, this court should nevertheless adopt the legal reasoning of the Twelfth District Court of Appeals in *State ex rel. Hartkemeyer v. Fairfield Twp.*, 12th Dist. Butler No. CA2012-04-080, 2012-Ohio-5842. In *Hartkemeyer*, a resident of Fairfield Township made a public-records request on July 27, 2011, via certified mail, for the following public records maintained by Fairfield Township:

> (1) audio recordings of all meetings of the Fairfield Township Board of Trustees from May 1 through July 27, 2011, (2) meeting minutes from all meetings of the Fairfield Township Board of Trustees from May 1 through July 27, 2011, and (3) meeting agendas from all meetings of the Fairfield Township Board of Trustees from May 1 through July 27, 2011.

*Id*. at ¶ 3.

{¶ 60} The assistant township administrator acknowledged receipt of the public-records request via e-mail, and she stated, "I * * * will make the items available to you as soon as possible." *Id*. at ¶ 4. In October 2011, Fairfield Township provided some of the requested records. *Id*. at ¶ 8. After some back-forth between the requestor and the township, the township finally provided all of the remaining responsive records on July 20, 2012, after the requestor had already filed a complaint for a writ of mandamus. *Id*. at ¶ 10.

{¶ 61} In granting the writ, the Twelfth District rejected Fairfield Township's argument that the burdensome nature of the public-records requests excused its tardy response:

> The statute does not offer exceptions to public offices that are understaffed or otherwise unable to comply with the statutory mandates because of the way the entity chooses to use its resources. While such circumstances may be considered to a limited degree when determining the reasonableness of a public office's response, the statute itself gives little latitude to circumventing the affirmative responsibilities placed upon those that maintain public records.

*Id*. at ¶ 26. The majority accepts essentially the same argument from Cleveland that Fairfield Township made in *Hartkemeyer*. The majority excuses Cleveland's late response, stating that Shaughnessy's "frequent requests * * * containing specific retrieval criteria, to cull out certain records" made Cleveland's response timely. Majority opinion at ¶ 8. The burden that a specific request places on a public entity cannot, in isolation, make a delay in responding to the request reasonable.

{¶ 62} In *Hartkemeyer*, the Twelfth District also considered that the public-records request was confusing and that some of the requested meeting minutes were not available. *Hartkemeyer*, 2012-Ohio-5842, at ¶ 27-28. This is similar to the majority's conclusion that Shaughnessy's requests were improper because they "required Cleveland to do research for Shaughnessy and to identify a specific subset of records containing selected information." Majority opinion at ¶ 10. The Twelfth District in *Hartkemeyer* found it determinative that "[t]he township never informed relator that it did not understand the July 27 request or that it found the request ambiguous or overly broad." *Hartkemeyer* at ¶ 27. Likewise, this court should not excuse Cleveland's slow response because Shaughnessy's requests were "improper." Cleveland could have denied the

requests, but it did not. As a result, we should ensure that Cleveland "promptly" produces requested records. In the end, I predict that the long-term effect of the majority's decision will be that Cleveland will endure more expansive, time-consuming public-records requests.

{¶ 63} The majority does not explain the distinction that it makes between the requests described in counts 1, 3, 4, and 5 of the complaint, which were deemed improper, and the one set forth in count 2 of the complaint, which it deemed proper, other than to state that the request in count 2 did not request a search by offense. It is undeniably apparent, however, from the majority's statement of Cleveland's procedural process, that in order to fulfill the public-records request described in count 2 of the complaint, Cleveland had to conduct a search of the database using the information that Shaughnessy had provided (i.e., the date, location, and type of offense) to obtain each offense-report number in order to retrieve the actual incident reports. The distinction between a more-general request giving a time frame, a location by district, and a type of offense versus a more-specific request providing a date, address, and type of offense is a distinction without a difference. In both cases, Cleveland must conduct a search of the database to find the police-incident-report numbers.

{¶ 64} Because Shaughnessy used Cleveland's public-records-request form and provided Cleveland with the specific information for the records he sought and Cleveland did not reject the request as being vague or overly broad, ask Shaughnessy to revise his request, or deny the request with explanation, the public-records requests in counts 1, 2, 3, 4, and 5 of the complaint were proper. Therefore, I dissent. Because the totality of the evidence demonstrates that Cleveland has the ability to prepare records responsive to requests similar to those in counts 1, 2, 3, 4, and 5 of the complaint in three to five days, I would hold that the eight-business-day standard established in *Wadd* is reasonable. Therefore, I would grant the writ of mandamus as to counts 1, 2, 3, 4, and 5 of the complaint

and order Cleveland to produce responsive records to future similar written public-records requests within eight business days. Moreover, I would grant Shaughnessy $2,000 in statutory damages pursuant to R.C. 149.43(C)(2).

_____

Matthew Shaughnessy, pro se.

Barbara A. Langhenry, Cleveland Director of Law, and Shawn M. Mallamad, Assistant Director of Law, for respondents.

_____